## UNITED STATES et al. v. WINANS et al.

### (Circuit Court, D. Washington, S. D.   March 31, 1896.)

1. INDIAN TRIBES—RIGHT OF FISHERY—YAKIMA INDIAN TREATY.

. The treaty of the United States with the Yakama Indians, after stipulating for the cession of the Indian lands to the United States, excepting a reservation for the Indians to which they agree to remove, provides that the Indians shall have the exclusive right of taking fish in all streams running through or bordering on the reservation, and also the right of taking fish at all usual and accustomed places, in common with citizens of the territory, and of erecting temporary buildings for curing them, together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle, upon open and unclaimed land. *Held*, that it was an

invasion of the rights of the Indians under such treaty to exclude them from fishing in the Columbia river, at a place to which, at and prior to the making of the treaty, the Indians were accustomed to resort, for fishing, though the lands bordering on the river at such place had been patented to private citizens, but that the right of the Indians to erect temporary buildings on any particular land ceased when such land was so patented and vested in private citizens.

2. SAME—RIGHT OF UNITED STATES TO SUE.

The United States has the right, as guardian and trustee of a tribe of Indians, to bring a suit to protect their rights secured by treaty.

3. UNITED STATES COURTS—JURISDICTION—LOCAL SUITS.

It seems that a suit by the United States to enforce the rights of a tribe of Indians to a fishery is local in its nature, and properly brought in the district where such fishery is, without regard to the residence of the defendants.

In Equity. Suit by the United States, together with certain Indian plaintiffs, for an injunction to restrain the defendants from interfering with fishery rights guarantied to the Indians of the Yakama Nation, by the terms of the treaty made and concluded between the United States and said Indians. Demurrer to the bill of complaint. Overruled.

Wm. H. Brinker, U. S. Atty.

F. P. Mays, for defendants.

HANFORD, District Judge. The bill of complaint in this case claims for the Yakama Indians an unlimited right to take fish from the Columbia river at a certain specified place, and a right of ingress and egress to and from said place, and a right to erect temporary buildings for curing fish, and for the habitations of said Indians during each fishing season, to the same extent as if such rights were especially granted and conferred by a patent from the proprietor and sovereign of the country. The basis for the claims is to be found in the reservations contained in the treaty between the United States and the Indians of the Yakama Nation, whereby the said Indians ceded to the United States the Indian title to certain lands. The provisions of the treaty material to be considered are as follows:

"Article 1. The aforesaid confederated tribes and bands of Indians hereby cede, relinquish, and convey to the United States all their right, title, and interest in and to the lands and country occupied and claimed by them. * * *

"Art. 2. There is, however, reserved from the lands above ceded, for the use and occupation of the aforesaid confederated tribes and bands of Indians, the tract of land included within the following boundaries, * * * all of which tract shall be set apart, and, so far as necessary, surveyed and marked out, for the exclusive use and benefit of said confederated tribes and bands of Indians, as an Indian reservation; nor shall any white man, excepting those in the employment of the Indian department, be permitted to reside upon the said reservation without permission of the tribe and the superintendent and agent. And the said confederated tribes and bands agree to remove to, and settle upon, the same, within one year after the ratification of this treaty. In the meantime it shall be lawful for them to reside upon any ground not in the actual claim and occupation of citizens of the United States; and upon any ground claimed or occupied, if with the permission of the owner or claimant. Guaranteeing, however, the right to all citizens of the United States, to enter upon and occupy as settlers any lands not actually occupied and cultivated by said Indians at this time, and not included in the reservation above named. * * *

"Art. 3. And provided, that, if necessary for the public convenience, roads may be run through the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right in common with citizens of the United States, to travel upon all public highways. The exclusive right of taking fish in all the streams, where running through or bordering said reservation, is further secured to said confederated tribes and bands of Indians, as also the right of taking fish at all usual and accustomed places, in common with citizens of the territory, and of erecting temporary buildings for curing them; together with the privilege of hunting, gathering roots and berries, and pasturing their horses and cattle upon open and unclaimed land.  *  *  *"

"Art. 10. And provided, that there is also reserved and set apart from the land ceded by this treaty, for the use and benefit of the aforesaid confederated tribes and bands, a tract of land not exceeding in quantity one township of six miles square, situated at the forks of the Pisquouse or Wenatshapam river, and known as the 'Wenatshapam Fishery,' which said reservation shall be surveyed and marked out whenever the president may direct, and be subject to the same provisions and restrictions as other Indian reservations"

12 Stat. 951.

It is plain that the treaty, whether considered as a grant from the United States government to the Indians or as a reservation by the Indians, secures to the Indians rights of two kinds, viz. exclusive rights and rights to be enjoyed in common with citizens. The rights of fishery within the tracts set apart for the Indians, and in streams bordering the same, are exclusive in favor of the Indians; while the right to take fish at usual and accustomed places, outside of reservations, is to be enjoyed in common with citizens of the territory. This common right of fishery at usual and accustomed places is coupled with the right of erecting temporary buildings for curing fish, and of hunting, gathering roots and berries, and pasturing horses and cattle, upon open and unclaimed land. It would not be a fair construction of the treaty to hold that any particular ground in addition to the reservations to be set apart and surveyed for the exclusive use of the Indians should be held permanently as places for temporary buildings, or for the pasturage of horses and cattle. The theory that lands conveyed by government patents, after being so conveyed, and appropriated by individual citizens, still remain subservient to use and occupation by the Indians, for travel over the same, otherwise than by lawfully established public highways, and for camping grounds, finds no support in the provisions of the treaty, nor in the rules for the construction and interpretation of statutes, which must be applied in the interpretation of the treaty and of the public land laws of the United States. On the contrary, the enumeration of other rights secured to the Indians by express words negatives any possible presumption of rights by mere implication; for the rule is, "Expressio unius est exclusio alterius." The language of the treaty indicates that the purpose was to secure to the Indians equality of rights with citizens in the matter of fishing, hunting, gathering roots and berries, and pasturing horses and cattle, and in the use and occupation of unclaimed land for the erection of temporary buildings during each fishing season.

The United States attorney has argued that the patenting of the banks of the Columbia river should not be made effective as a means of depriving the Indians entirely of all benefits secured to them by

the treaty in the matters of places for temporary houses, for, without some place to build upon, their common right of fishery will be itself destroyed. This might be a good argument against issuing patents, but, in so far as it bears upon the questions in this case, it may be well answered by saying that the executive branch of the government had ample power to provide for the Indians by reserving from sale and settlement as much ground as the Indians require for their use; and if the president has failed to exercise his power, and if it is now too late for him to protect the Indians in their treaty rights, they may purchase and own the ground necessary for their use, as citizens who have a common right of fishery with them may do.

The bill of complaint charges the defendants with having violated the rights of the Indians in the following particulars: By forcibly preventing the Indians from fishing in the Columbia river in front of certain specified land in the possession of the defendants, and to which they claim to have acquired the title from the government of the United States, the place indicated having been at the time of the making of said treaty, and long prior thereto, one to which the Indians were accustomed to resort during the fishing season of each year, for the purpose of taking fish and curing the same, to supply themselves with food; by placing fish wheels so as to take all the fish coming in front of said land, and thereby excluding the Indians from enjoying their common right of taking fish at said place; and by destroying the buildings erected by the Indians for curing fish, and, by force, preventing the Indians from rebuilding. It is plainly an invasion of the rights of the Indians, under the treaty, to exclude them from fishing in the Columbia river at the place indicated, and the government has the right to employ the power of this court to make the treaty effective. But the right of the Indians to erect temporary buildings on any particular spot of ground, according to the terms of the treaty, as I construe it, ceased when the title to that land was transferred from the government, and became vested as private property. The demurrer must be overruled, for the bill states facts sufficient to require the court to enjoin the defendants from interfering with the Indians in the enjoyment of their common right of fishery, although, in my opinion, the court will not be justified in issuing process to compel the defendants to permit the Indians to make a camping ground of their property while engaged in fishing.

The defendants, upon the authority of the cases of U. S. v. Huffmaster, 35 Fed. 81–83, contend that this court is without jurisdiction, for the reason that the amount in controversy does not exceed $2,000. The Huffmaster Cases, however, have been overruled by the supreme court in a decision rendered December 23, 1895, in the case of U. S. v. Sayward, 16 Sup. Ct. 371.

The United States has the right to maintain the suit as guardian and trustee of the Indians, to protect their rights secured by the treaty. U. S. v. Boyd, 68 Fed. 577; U. S. v. Flournoy Live-Stock & Real-Estate Co., 69 Fed. 886; U. S. v. Holliday, 3 Wall. 407; U. S. v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109.

The defendants voluntarily entered a general appearance in this

case, without reserving any right to object to the jurisdiction of the court by reason of being inhabitants of the state of Oregon. Their demurrer, filed more than a month afterwards, goes to the merits of the controversy, and it does not specifically make the objection that the suit was not brought in the proper district. I consider the suit to be local in its nature,—that is to say, a suit to enforce a claim to property situated within this district; and therefore this court is authorized to assume jurisdiction, by virtue of the eighth section of the act of March 3, 1875 (1 Supp. Rev. St. [2d Ed.] 84, 85). Hatch v. Ferguson, 57 Fed. 966; Id., 15 C. C. A. 201, 68 Fed. 43; Greeley v. Lowe, 155 U. S. 58–76, 15 Sup. Ct. 24. But if this were not so, the defendants having waived their personal privilege of exemption from being sued in this district, by having appeared and pleaded to the merits, they cannot be heard to urge the objection now. Railway Co. v. Cox, 145 U. S. 593–808, 12 Sup. Ct. 905. The subject-matter of the action is within the jurisdiction of the court, and the defendants are in court for all purposes of the litigation.

Demurrer overruled.