UNITED STATES v. THURSTON COUNTY, NEB., et al.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1906.)

No. 2,339.

1. INDIANS—INDIAN LANDS—STATE TAXATION—ALLOTMENTS EXEMPT FROM WHILE INALIENABLE.

Lands allotted to Indians, inalienable for certain periods of time during which they are held in trust by the United States for the benefit of the allottees and their heirs under Act Aug. 7, 1882, 22 Stat. 342, c. 434, § 6, or Act Feb. 8, 1887, 24 Stat. 389, c. 119, § 5, are exempt from taxation by any state or county during the period of the trust, because they are instrumentalities lawfully employed by the nation in the exercise of its powers of government to protect, support, and instruct the Indians.

2. SAME—PROCEEDS OF INHERITED INDIAN LANDS EXEMPT FROM STATE TAXATION.

The proceeds of the sales of such allotted lands by the Indian heirs of the allottees under Act May 27, 1902, 32 Stat. 245, 275, c. 888, § 7, which have been deposited by direction of the Secretary of the Interior in a bank selected by the Commissioner of Indian Affairs to the credit of the heirs in proper proportions, subject to their checks only when approved by the agent or officer in charge, are held in trust by the United States for the same purposes as were the lands, and are exempt from taxation by any state or county for the same reason.

3. TRUSTS—NO CHANGE OF FORM OF PROPERTY DIVESTS—THE SUBSTITUTE TAKES THE NATURE OF THE ORIGINAL.

No change of form of property divests it of a trust. The substitute takes the nature of the original and stands charged with the same trust. The authorized sale of trust property by a trustee discharges the property sold from, and charges the proceeds of the sale in the hands or under the control of the trustee with, the trust.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 85.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of Nebraska.

For opinion below, see 140 Fed. 456.

A. W. Lane (Irving F. Baxter, on the brief), for appellant.

Thomas L. Sloan (W. S. Summers and W. E. Whitcomb, on the brief), for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. This is an appeal from a decree of dismissal upon a demurrer to a bill exhibited by the United States to prevent the county of Thurston in the state of Nebraska from collecting taxes from certain Indians of the Omaha and Winnebago tribes

who reside in that county on account of the proceeds of the sales of their inherited lands which have been deposited in a bank by order of the Secretary of the Interior. These Indians are heirs of Indian allottees, whose lands were held in trust by the United States either under Act Aug. 7, 1882, 22 Stat. 342, c. 434, § 6, or under Act Feb. 8, 1887, 24 Stat. 389, c. 119, § 5, which provide that the United States will hold each of their respective allotments "for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or in case of his decease, of his heirs." The allottees died, and their heirs were permitted by the Secretary of the Interior to sell the allotments they inherited under Act May 27, 1902, 32 Stat. 245, 275, c. 888, § 7, on condition that the proceeds of the sales should be deposited to their respective individual credits in a bank selected by the Commissioner of Indian Affairs, subject to their respective checks for not exceeding $10 in any one month, when approved by the Indian agent or officer in charge, and to checks for sums in excess of $10 per month upon the approval of the agent when specifically authorized by the Commissioner of Indian Affairs. The proceeds of these sales on deposit in the bank aggregate more than $36,000. In no instance have the 25 years during which the United States undertook to hold the allotments in trust expired. The officers of the county of Thurston have assessed these deposits for taxation and will levy taxes thereon and collect the same of the Indians who are equitably entitled thereto unless prohibited by order of the court. The Indians to whom these proceeds belong in equity are members of the Omaha and Winnebago tribes, respectively, and these tribes are still under the charge of Indian agents appointed by the United States, which distributes annuities of merchandise, field seeds, farming machinery, and at times stores for subsistence and annuities in money to them, and maintains schools and employs a physician, farmers, teachers, and interpreters for their benefit. The complainant discloses the foregoing facts by its bill, alleges that it brings this suit as trustee for each of these individual heirs and as trustee of the funds derived from the sales of their inherited lands, that it has permitted these sales and caused the deposits of money derived therefrom in the bank, and is controlling the disposition thereof in execution of its trust for the use and benefit of these heirs, and it prays that the county of Thurston and its officers be enjoined from levying any taxes upon these deposits and from collecting any taxes from these Indians on account of them.

In the consideration of the questions which this bill presents the assumption will be indulged that the Indians for whose benefit the proceeds of these lands are held are citizens of the United States and of the state of Nebraska. Their civil and political status, however, does not condition the power, authority, or duty of the United States to exert its powers of government to control their property, to protect them in their rights, to faithfully discharge its legal and moral obligations to them, and to execute every trust with which it is charged for their benefit. Matter of Heff, 197 U. S. 488, 509, 25 Sup. Ct. 506, 49 L. Ed. 848; Buster v. Wright, 68 C. C. A. 505, 135 Fed. 947; Wallace v. Adams (C. C. A.) 143 Fed. 716, decided at

this term. They are still members of their tribes and of an inferior and dependent race, of which the Supreme Court has said that "from their very weakness and helplessness, so largely due to the course of dealing of the federal government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power. This has always been recognized by the Executive and by Congress, and by this court, whenever the question has arisen." U. S. v. Kagama, 118 U. S. 375, 384, 6 Sup. Ct. 1109, 30. L. Ed. 228. The experience of more than a century has demonstrated the fact that the unrestrained greed, rapacity, cunning, and perfidy of members of the superior race in their dealings with the Indians unavoidably drive them to poverty, despair, and war. To protect them from want and despair, and the superior race from the inevitable attacks which these evils produce, to lead them to abandon their nomadic habits and to learn the arts of civilized life, the government of the United States has long exercised the power granted to it by the Constitution (article 1, § 8, subd. 3) to reserve and hold in trust for them large tracts of land and large sums of money derived from the release of their rights of occupancy of the lands of the continent, to manage and control their property, to furnish them with agricultural implements, houses, barns, and other permanent improvements upon their lands, domestic animals, means of subsistence, and small amounts of money, and to provide them with physicians, farmers, schools and teachers. The Indian reservations, the funds derived from the release of the Indian right of occupancy, the lands allotted to individual Indians, but still held in trust by the nation for their benefit, the improvements upon these lands, the agricultural implements, the domestic animals and other property of like character furnished to them by the nation to enable and induce them to cultivate the soil and to establish and maintain permanent homes and families, are the means by which the nation pursues its wise policy of protection and instruction and exercises its lawful powers of government.

The power to tax is the power to destroy. The Constitution, the laws of the United States made in pursuance of it, and the government of the United States, in the execution of these laws, are supreme. They are superior to, and control, the Constitutions, the laws, and the governments of the states. The power of a state to tax the forts, the arsenals, the ships, the buildings, the lands, the funds, or any other means lawfully used by the nation to exert its legal powers, is inconsistent with its supremacy and subversive of the national government. Hence no such power exists, or can exist, in any state. Every instrumentality lawfully employed by the United States to execute its constitutional laws and to exercise its lawful governmental authority is necessarily exempt from state taxation and interference. McCullough v. Maryland, 6 Wheat. 316, 4 L. Ed. 479; Van Brocklin v. State of Tennessee, 117 U. S. 151, 155, 6 Sup. Ct. 670, 29 L. Ed. 845; Wisconsin Central Railroad Co. v. Price County, 133 U. S. 496, 504, 10 Sup. Ct. 341, 33 L. Ed. 687. It is for this reason that the Supreme Court decided that lands held by Indian allottees under Act Feb. 8, 1887, 24 Stat. 389, c. 119, § 5, within 25

years after their allotment, houses and other permanent improvements thereon, and the cattle, horses, and other property of like character which had been issued to the allottees by the United States and which they were using upon their allotments, were exempt from state taxation, and declared that "no authority exists for the state to tax lands which are held in trust by the United States for the purpose of carrying out its policy in reference to these Indians." U. S. v. Rickert, 188 U. S. 432, 441, 23 Sup. Ct. 478, 482, 47 L. Ed. 532. Why are not the proceeds of the sales of these allotted lands, which the United States causes to be deposited and held subject to its disposition, in a bank which it selects, for the benefit of those Indians equitably entitled thereto, equally held in trust by it for the same purpose and equally exempt from state taxation for the same reason?

The answer of counsel for the county is: (1) Because these deposits are discharged of the trust by Act May 27, 1902, 32 Stat. 245, 275, c. 888, § 7; and (2) because the United States has no lawful authority to withhold these moneys from their beneficiaries or to control their disposition. Let us examine these positions. The lands which were sold were held by the complainant in trust to preserve them for the exclusive use and benefit of the respective Indian allottees and their heirs until the expiration of 25 years from the respective dates of their allotments, and then to convey them to the allottees respectively or their heirs "in fee discharged of said trust and free of all charge or incumbrance whatsoever." 22 Stat. 342, c. 434, § 6; 24 Stat. 389, c. 119, § 5. The undertaking to convey them at the end of the 25 years free of all charge or incumbrance imposed an obligation to keep them free from the burden or charge of state taxation, as well as of every other incumbrance. U. S. v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. The act of May 27, 1902, provides that any heir of any Indian allottee to whom a trust or other patent containing restrictions on alienation has issued may sell and convey the lands inherited from such an allottee, "but all such conveyances shall be subject to the approval of the Secretary of the Interior and when so approved shall convey a full title to the purchaser the same as if a final patent without restriction upon alienation had been issued to the allottee," and that lands so conveyed shall thenceforth be subject to taxation by the state in which they are situated. 32 Stat. 275, c. 888, § 7. The authorized sale and conveyance of trust property by a trustee discharges the property sold from, and charges the proceeds of its sale in the hands or under the control of the trustee with, the trust. No change of form of property can divest it of a trust. The substitution of one kind of property for another, of goods for promissory notes, of lands for bonds, or of money for lands, does not destroy it. The substitute takes the nature of the original and stands charged with the same trust. Taylor v. Plumer, 3 Maule & Sel. 562, 574; In re Hallett's Estate, Knatchbull v. Hallett, 13 Chan. Div. 696, 717, 719, 733; Cook v. Tullis, 85 U. S. 332, 341, 21 L. Ed. 933; McLaughlin v. Fulton, 104 Pa. 161, 171; Third National Bank v. Stillwater Gas Co., 36 Minn. 75, 78, 30 N. W. 440; 2 Perry on Trusts,

§§ 835, 836, 837. The act of May 27, 1902, contains nothing to withdraw these sales or their proceeds from the operation of this basic principle of equity jurisprudence. All the provisions of that act are in strict conformity to it, and there is no logical escape from the conclusion that, as long as the United States withholds the possession of these proceeds from those who are equitably entitled to the benefit of them and the term of the original trust continues, it holds these proceeds, as it held the lands which produced them, charged with the same trust to preserve them intact and to pay them to the cestuis que trust "free of all charge or incumbrance whatsoever," either by reason of taxation by any state or county or otherwise.

Nor is the complainant without lawful authority to hold these proceeds and to control their disposition in the same way that it held and controlled the lands in trust for the benefit of these Indian heirs. The act of 1902 authorized these heirs to sell and convey their inherited lands only when the proposed sales were approved by the Secretary of the Interior. It thereby vested in the Secretary plenary power to permit or to forbid the sales proposed. The whole is greater than any of its parts, and includes them all, and the authority to allow or to prohibit proposed sales necessarily included the power to consider and determine the terms and conditions on which such sales should be approved. By rules and regulations approved October 4, 1902, and amended September 16, 1904, and May 25, 1905, the Secretary provided that owners of inherited Indian lands might be permitted to sell them on condition that they agreed that the proceeds of such lands should be placed in one or more banks, which should furnish satisfactory bonds to guaranty the safety of the deposits, to the credit of each heir in proper proportion, subject to the checks of such heirs only when approved by the agent or officer in charge for amounts not exceeding $10 to each in any one month, and subject to their checks for larger amounts only when approved by the agent specifically authorized by the Commissioner of Indian Affairs. The acts of Congress authorized the Secretary to make these regulations for the purpose of carrying into effect the act of 1902, and, when made, they had the force of statutory enactments. Rev. St. §§ 441, 465 [U. S. Comp. St. 1901, pp. 252, 264]; U. S. v. Eaton, 144 U. S. 688, 12 Sup. Ct. 764, 36 L. Ed. 591; Wilkins v. U. S., 96 Fed. 837, 37 C. C. A. 588. The Indians whose rights are under consideration made the sales of their lands subject to the conditions prescribed by these rules. The bank and a surety executed a bond in the sum of $50,000 to the United States, conditioned that it would pay the rate of interest upon the proceeds of the sales of these lands deposited with it which should be agreed upon by it and the Commissioner of Indian Affairs, and that it would pay over the deposits in the manner provided in the regulations of the Secretary of the Interior to which reference has been made. The proceeds of these sales were deposited with this bank under this bond and under these rules. These facts, the statutes, and the principles of equity jurisprudence which have been considered, have led our minds to these conclusions:

As the Secretary of the Interior was empowered to permit or for-

bid the sales of these inherited Indian lands, he had authority to determine upon what conditions he would allow such sales, and to prescribe and enforce the terms specified in his regulations upon this subject. The allotted lands were held in trust by the United States for the benefit of those to whom they were assigned, and their heirs,. under the acts of August 7, 1882, and February 8, 1887. The proceeds of the sales of these lands have been lawfully substituted for the lands themselves by the trustee. The substitutes partake of the nature of the originals, and stand charged with the same trust. The lands and their proceeds, so long as they are held or controlled by the United States and the term of the trust has not expired, are alike instrumentalities employed by it in the lawful exercise of its powers of government to protect, support, and instruct the Indians, for whose benefit the complainant holds them, and they are not subject to taxation by any state or county.

The decree below must be reversed, and the cause must be remanded to the Circuit Court, with instructions to permit the defendants to answer the bill and to take further proceedings not inconsistent with the views expressed in this opinion. It is so ordered.