### UNITED STATES v. AUGER et al.

(Circuit Court, W. D. Wisconsin. May 24, 1907.)

#### No. 131.

INDIANS—INDIAN LANDS—ALLOTMENT—PATENTS—RESTRICTIONS—SALE OF TIMBER—RIGHTS OF UNITED STATES.

Lands in controversy were allotted to certain Chippewa Indians under treaty of September 30, 1854, and patented to them with the restriction that they should not sell, lease, or in any manner alienate the land without the consent of the President of the United States, which restriction was inserted by authority conferred on the President by article 3 of such treaty (10 Stat. 1110). *Held*, that the patent devested the United States of all title to the land or timber growing thereon, notwithstanding the restriction; and that the United States had therefore no capacity to sue to recover the value of timber cut from such allotments under an improvident contract between defendants and the allottees.

The Attorney General and Wm. G. Wheeler and Henry H. Morgan, U. S. Attys.

Victor T. Pierrelee and W. M. Tomkins, for defendant Auger.

Geo. F. Merrill, for defendants Peppard.

SANBORN, District Judge. Bill in equity to recover the value of certain timber cut from allotments of certain Chippewa Indians of Lake Superior, on the Bad River reservation.

The lands were allotted to the Indians under the treaty of September 30, 1854, and patented to them with the restriction that they should not sell, lease, or in any manner alienate the tract of land described in the patent, without the consent of the President of the United States. These restrictions were written into the patents pursuant to the provisions of article 3 of the La Pointe treaty of September 30, 1854 (10 Stat. 1110), which provides that the United States would define the boundaries of the reserved tracts whenever it might be necessary, by actual survey, and the President might from time to time, at his discretion, cause the whole to be surveyed, and might assign to each head of a family or single person over 21 years of age 80 acres of land for his or their separate use; and he might, at his discretion, as fast

as the occupants became capable of transacting their own affairs, issue patents therefor to such occupants, with such restrictions on the power of alienation as he might see fit to impose. Without some such provision in the treaty, or in some act of Congress, the restrictions in the patent would have been invalid. Francis v. Francis, 203 U. S. 233, 27 Sup. Ct. 129, 51 L. Ed. ——.

General demurrer to the bill was filed by the defendants, setting up want of equity and want of title in the complainants. Under the patents mentioned the full title to the lands passed to the Indian allottees. The United States has retained no interest whatever. As said by Mr. Justice Brown, in Schrimpscher v. Stockton, 183 U. S. 290, 299, 22 Sup. Ct. 107, 111, 46 L. Ed. 203:

"The government thus passed all its title to the land in fee simple, and a violation of the condition of the patent (against alienation without the consent of the Secretary of the Interior) would not redound to the benefit of the United States, or enable it to repossess the lands, but was simply intended to protect the grantee himself against his own improvident acts, and to declare that the title should remain in him notwithstanding any alienation that he might make."

It appears from the bill that the timber was sold by the Indians without the consent of the President. Undoubtedly it is true that no title to the timber passed to the defendants, and that the Indians themselves by actions at law in their own names might recover in replevin suits or its value in trespass or trover; but it is difficult to see how the government has retained any interest. If the timber, which is real estate until severed, had been sold by consent of the President upon condition that the proceeds should be held by the Indian agent for the benefit of the Indians, there would be a trust relation between the government and the Indians which might support an action. A similar trust was enforced by the United States Circuit Court of Appeals of the Eighth Circuit in United States v. Thurston County, 143 Fed. 287, 74 C. C. A. 425. And such a relation might sustain an action in equity by the government against any person interfering with the fund, but in this case the President has consented to nothing. The Indian has simply undertaken to sell the timber without any right so to do, and the purchaser has taken it off and sold it to other persons. The sole right of action is in the Indian allottees. There seems to be nothing upon which a trust relation can be founded. The late case of United States v. Paine Lumber Co., 27 Sup. Ct. 697, 51 L. Ed. ——, seems to be decisive of the question here involved.

It is no doubt true that the Indian allottees will not bring suits, and that in the practical sense there is no remedy in such a case as this. If it were possible to find any remedy, it ought to be applied, and some means found to protect the Indians in their improvidence; but Congress has not seen fit to give any remedy, and the demurrer should therefore be sustained.