### BOWLING et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 13, 1911.)

#### No. 3,585.

1. INDIANS (§ 15*)—ALLOTTED LANDS—RESTRAINT UPON ALIENATION.

A restriction upon the power of an Indian allottee to alienate land for 25 years after patent, imposed by statute and also embodied in the patent, runs with the land and invalidates any attempted conveyance of the land by heirs of the allottee after his death during the limitation period.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 37–39; Dec. Dig. § 15.*]

2. INDIANS (§ 15*)—LANDS—RESTRICTIONS ON ALIENATION—RIGHT OF UNITED STATES TO ENFORCE BY SUIT.

It is competent for the United States, in the carrying out of its declared policy with respect to the Indians, to maintain suits to set aside conveyances of land by allottees or their heirs in violation of the restrictions on alienation imposed by Congress, and the fact that the allottees may be citizens is immaterial.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 15.*]

3. INDIANS (§ 27*)—LANDS—SUIT BY UNITED STATES TO ENFORCE RESTRICTIONS ON ALIENATION—RES JUDICATA.

The right of the United States to maintain a suit in equity to set aside conveyances of lands by Indian allottees in violation of the statutory restrictions on alienation is not barred by a decree entered against such allottees in a suit for specific enforcement of their contract to convey, to which the United States was not a party, since its suit is in its own right and the allottees are not necessary parties thereto.

[Ed. Note.—For other cases, see Indians, Dec. Dig. § 27.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Suit in equity by the United States against George E. Bowling and the Miami Investment Company. Decree (181 Fed. 887) for complainant, and defendants appeal. Affirmed.

Halbert H. McCluer (Roland Hughes, on the brief), for appellants. Paul A. Ewert, Sp. Asst. Atty. Gen., for the United States.

Before SANBORN, Circuit Judge, and MARSHALL and W. H. MUNGER, District Judges.

MARSHALL, District Judge. This suit was instituted by the United States against 29 defendants to obtain a decree setting aside various conveyances of a tract of land originally allotted to Pe-te-lon-o-zah, or William Wea, a member of the Confederated Wea, Peoria, Kaskaskia and Piankeshaw Tribe of Indians, and also to declare void a judgment

rendered by the United States Court for the Northern District of the Indian Territory, which decreed a transfer of this land. As ground for this relief, the bill alleged an allotment and patent to William Wea of the land under an act of Congress approved March 2, 1889, entitled "An act to provide for allotment of land in severalty to the United Peoria and Miamies in Indian Territory, and for other purposes" (Act March 2, 1889, c. 422, 25 Stat. 1013); the death of William Wea, intestate leaving heirs; a contract between certain Indians claiming to be the only heirs of said Wea, and one of the defendants, George E. Rundell, by which these heirs agreed to convey the land to Rundell for the purchase price of $1,000, $25 of which was paid by Rundell at the date of the contract, the balance to be paid when the heirs established their right to convey and on delivery of a deed for the land; a suit instituted by these heirs against Rundell for a specific performance of this contract, resulting in the judgment mentioned above, in which it was decreed that the plaintiffs in that suit were the only heirs of William Wea, had full right to convey this land, and that the contract be specifically enforced; a delivery of a deed to Rundell pursuant to this decree, and various mesne conveyances purporting to vest the title in the Miami Investment Company, one of the appellants; the fact that this judgment and all of these conveyances were prior to the expiration of the 25-year period of restraint on alienation imposed by the act of Congress; and further that the action instituted by the heirs of Wea against Rundell was collusive and a part of a fraudulent scheme to obtain title to this land in violation of the prohibition against alienation. Bowling, one of the mesne grantors, and the Miami Investment Company jointly demurred to the bill. This demurrer was overruled, and they then answered. The substantial facts alleged in the bill were admitted by the answer, except that all of the averments of collusion and fraud in respect to the action between the heirs of William Wea and Rundell were denied; and it was affirmatively alleged that this suit was instituted in good faith to settle an actual controversy, and the judgment therein was a complete estoppel against the prosecution of the present action. The cause was set down for hearing on bill and answer, and from the decree in favor of the United States this appeal is prosecuted.

The questions involved, as stated in appellants' brief, are: (1) Does the restraint on alienation of allotted land imposed by the act of Congress run with the land so as to bind Indian heirs of the allottee, or, is it personal to the allottee, ceasing with his death? (2) Has the United States such an interest as entitles it to maintain this suit in its own name? (3) Is the judgment of the territorial court a conclusive adjudication of this controversy?

[1] As early as 1854, by a treaty with the United States, the Wea Tribe of Indians became confederated with the Peoria, Kaskaskia, and Piankeshaw Tribes (May 30, 1854, 10 Stat. 1082). By virtue of the treaty of February 23, 1867, 15 Stat. 513, this confederated tribe was permitted to dispose of the lands which they had theretofore acquired in Kansas, and, with the proceeds, to purchase certain lands acquired by the United States from the Senecas and Quapaws and situated in

the northeast part of what is now the state of Oklahoma. The land in controversy here is a part of the land so purchased. The twenty-second article of this treaty contained this clause:

"The land in the second and fourth articles of this treaty proposed to be purchased from the Senecas and Quapaws, and lying south of Kansas, is hereby granted and sold to the Peorias." 15 Stat. 519.

The general allotment act (Act Feb. 8, 1887, c. 119, 24 Stat. 388) excepted the Peoria Indians, by which name the Confederated Tribe was known, from its provisions; but the act of March 2, 1889, c. 422, 25 Stat. 1013, with the consent of these Indians, extended all of the provisions of the general allotment act, excepting section 6, and, so far as was consistent with the other provisions of the act, to the Confederated Wea, Peoria, Kaskaskia and Piankeshaw Tribe of Indians. Section 6 of the general allotment act conferred citizenship upon each Indian to whom an allotment of land was made under any law of or treaty made with the United States, but this exception became immaterial when by the act of May 2, 1890, citizenship was expressly granted to the members of this tribe (Act May 2, 1890, c. 182, § 43, 26 Stat. 99).

With respect to the alienation of allotted land, it was provided, in the act of March 2, 1889, that:

"The land so allotted shall not be subject to alienation for twenty-five years from the date of the issuance of patent therefor, and said land so allotted and patented shall be exempt from levy, sale, taxation, or forfeiture for a like period of years. As soon as all the allotments or selections shall have been made as herein provided, the Secretary of the Interior shall cause a patent to issue to each and every person so entitled, for his or her allotment, and such patent shall recite in the body thereof that the land therein described and conveyed shall not be alienated for twenty-five years from the date of said patent, and shall also recite that such land so alloted and patented is not subject to levy, sale, taxation, or forfeiture for a like period of years, and that any contract or agreement to sell or convey such land or allotments so patented entered into before the expiration of said term of years shall be absolutely null and void."

Under these statutory provisions the land in question was allotted to William Wea and a patent therefor issued to him, granting it in fee simple, but subject to the restraint on alienation prescribed by the act of March 2, 1889. We are not concerned with the common-law rule as to the effect of such a restraint on the fee-simple title. The statute under which the patent issued was a law and changed the common law to the extent intended by Congress. This court, in Goodrum v. Buffalo, 162 Fed. 817, 89 C. C. A. 525, held that such a restraint on alienation ran with the land so as to limit the power of the allottee's heirs to dispose of it. The case involved the title to allotted land in the same Quapaw Reservation in which Wea's allotment is situated. Both patent and statute were similar in respect to the restraint on alienation. The authorities were exhaustively considered, and it was there said:

"The language of the act and the patent could not have been more exact and clear to express the purpose and policy of the government to deny the power and right of these allottees to dispose of the lands in any manner until after the stated period of 25 years. As the greater includes the lesser, no contract, agreement, or obligation in form entered into by the allottee

or his heirs within the limitation period could possibly have the effect to operate as, or result in, a transfer of the title to these lands to a third party."

We see no reason to depart from the rule laid down in this case.

[2] In Goodrum v. Buffalo, supra, suit was brought by the Indian heirs; here the United States invokes the jurisdiction of its court to enforce this restraint imposed by its law. Its right to do so is denied by the appellants on the ground that the Indian heirs are citizens of the United States with all of the rights and immunities of citizenship, and that the grant to their ancestor was of a fee-simple title; no title remaining in the United States in trust for the heirs for the protection of which it could properly bring suit as trustee. Doubtless the heirs might have sued, and this is what was done in Goodrum v. Buffalo; but the mere fact of citizenship does not so alter their relations with the government as to change their dependent status, nor to preclude the operation of laws intended to protect them in their property rights and based on the conclusion that they are not yet fitted to protect themselves. Beck v. Flournoy Live Stock & Real Estate Co., 65 Fed. 30, 12 C. C. A. 497; Marchie Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738. Admitting then as established that the United States has the power to impose this restraint on alienation for the protection of the Indian, has it the right to enforce the restraint by a civil action, not as guardian of the Indian, but as a government enforcing a law based on a great public policy?

This right has been affirmed by this court in United States v. Allen, 179 Fed. 13, 103 C. C. A. 1. In that case suit was brought by the United States to set aside conveyances made by members of the Five Civilized Tribes of Indians of allotted land in violation of restrictions imposed on alienation by the various statutes providing for the allotment. The Indian allottees were not parties to the suit nor was it instituted at their request. This court, speaking by Judge Amidon, said:

"Turning now to the objections which were made and sustained by the trial court, has the federal government such an interest as entitles it to maintain these suits? It will be conceded at the outset that it has no legal or equitable estate in the allotments; and, if such an estate is necessary, it has no standing in court. It is, however, too plain for controversy that the federal government imposed restrictions upon the alienation of these allotments. That restriction was its main reliance for the social and industrial elevation of the Indians. Has it a standing in court for the enforcement of its policy? To say that it has not is to make the restraints upon alienation a mere brutum fulmen. Shall the Indians, who are intended to be restrained, be made the sole agency for the enforcement of the restraint? If so, the act of Congress is nothing more than a benevolent admonition. If they are unable to resist the allurements by which they are enticed into making the conveyances, will they be expected to undertake the difficult and protracted litigation necessary to set aside their own acts? To ask these questions is to answer them. Congress intended that both the Indians and the members of the white race should obey its limitations. A transfer of the allotments is not simply a violation of the proprietary rights of the Indian. It violates the governmental rights of the United States. If these Indians may be divested of their lands, they will be thrown back upon the nation a pauperized, discontented, and, possibly, belligerent people. To prevent such results the United States may invoke the aid of its courts. That question was put to rest in the decision of In re Debs, 158 U. S. 564 [15 Sup. Ct. 900, 39 L. Ed. 1092]. When a suit in equity is an appropriate method for the en-

forcement of a governmental policy, the national government may maintain such suit. The present case presents a right of the nation which has been violated and cannot be redressed in any other way than by a suit in equity. If its interest in its measures does not give it a standing in court, then the violation of those measures must go wholly without redress. Governmental action cannot thus be paralyzed. If the aid of the court is an appropriate remedy, the government has the same right to proceed in that manner that it has to use executive power where that power is an appropriate agency for the accomplishment of its purposes."

This decision concludes the question in this court.

[3] The third objection raised to this decree is in effect answered by U. S. v. Allen. If the United States has the right by a civil action to enforce the restraint on alienation in order to effect its public policy, this right cannot be destroyed by a decree in a suit to which it is not a party. As to the United States such a decree is res inter alios acta and has no greater effect than the voluntary conveyance of the allottee. In United States v. Allen, it was claimed by the defendant that there was a defect of parties because the Indian grantors were not made parties, and the decree, if adverse to the government, would not debar these grantors from subsequently seeking the same relief. It was held that the grantors were not necessary parties, and it was there said:

"The allottees in the present case do not come within the class of indispensable parties as thus defined. The cause of action set up in the bill is not theirs, but the government's. True, if the government succeeds, their titles will be cleared of clouds; but, if it does not succeed, they will be left with their personal causes of action unaffected by what is done in the present litigation. It may be said that this very fact makes the presence of the allottees necessary to complete justice to the defendants. While the measure of justice in their favor would be more complete if the allottees were present, that fact does not render the allottees indispensible parties. It is not the mere convenience of the parties before the court which renders absent parties indispensable, but the protection of the rights of those absent parties. Looking at the entire litigation, justice to the defendants will also be promoted by this practice. The Indians have already parted with their lands by deed. While they have the legal right to assail the conveyances if they were made in violation of the statute against alienation, the exercise of that right by the Indians after a decision against the government in the present suit is so problematical that it would be oppressive to compel the plaintiff to bring all allottees before the court, and would also add unnecessarily to the costs of the defendants in case the suits shall go against them. Again, the allottees, if present, would have no control over the suits. Their consent to a judgment in favor of the defendants would not defeat the right of the government. In our judgment, therefore, there is no defect of parties."

If a decree against the United States left unaffected the cause of action of the Indian grantor, on what theory can it be claimed that a decree against the grantor bars the United States? The causes of action are entirely distinct. The right of the government is not derivative and is in its own behalf, not as a landowner it is true, but governmental to enforce its laws. The decision in United States v. Allen is so recent, was reached after exhaustive argument and investigation, and we must decline to treat the question as still open in this court.

The decree appealed from will therefore be affirmed.