UNITED STATES v. GRAY et al.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 3,794.

*(Syllabus by the Court.)*

Indians (§ 27*)—Leases and Rights—Pleading and Practice—Capacity of United States to Sue to Enforce Governmental Rights.

The United States has capacity to sue to recover damages for the breach of a lease made by an Indian allottee with the approval of the Secretary of the Interior, or to protect or enforce any other Indian property right which remains under the control and supervision of the Secretary or the Indian agent, his subordinate, because such suits are indispensable to the protection and enforcement of the governmental rights of the United States and its governmental policy to protect the property rights of the Indians and to teach them the arts of civilized life.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 19, 20; Dec. Dig. § 27.*]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by the United States, as guardian and trustee of Ben Niccowree, against Arthur Leon Gray and John Dinkins. Judgment for defendants, and the United States brings error. Reversed and remanded.

Hiram E. Booth, U. S. Atty. (Wm. M. McCrea, of Salt Lake City, Utah, on the brief), for the United States.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before SANBORN and CARLAND, Circuit Judges, and WIL-LIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge.   The question which this case presents is whether or not the United States has capacity to sue a lessee and his surety for breaches of the covenants of a lease made by an Indian allottee and approved by the Secretary of the Interior.

Ben Niccowree was an Uncompahgre Ute Indian, under the direction and supervision of the Uintah and Ouray Indian agency, and an allottee of a tract of 80 acres of land under the act of Congress of February 8, 1887, the legal title to which the United States was holding in trust for the period of 25 years for him, or in case of his death for his heirs.   Act Feb. 8, 1887, c. 119, 24 Stat. 389, § 5; Act May 27, 1902, c. 888, 32 Stat. 263; Joint Res. June 19, 1902, 32 Stat. 744; United States v. Rickert, 188 U. S. 432, 436, 23 Sup. Ct. 478, 47 L. Ed. 532.   He had no power to alienate the land during the 25 years, and the act of Congress expressly declared that any conveyance of or contract touching it during that time should be absolutely null and void.   Pursuant to section 3 of the act of February 28, 1891 (26 Stat. 795, c. 383), and of the act of August 15, 1894 (28 Stat. 305, c. 290), which provided that when it is made to appear to the Secretary of the Interior that by reason of age, disability, or inability any such allottee cannot personally with benefit to himself occupy or improve his allotment, the same may be leased upon such terms, regulations, and conditions as shall be prescribed by the Secretary of the Interior for a term not exceeding five years for farming or grazing purposes, this land was leased by Niccowree, on terms and conditions approved by the Secretary in accordance with regulations made by him, to the defendant Gray, and the defendant Dinkins became a surety for Gray's performance of the covenants of the lease.   This lease recited that it was between "Ben Niccowree of Uintah and Ouray Indian agency" and Arthur Leon Gray.   It contained covenants that Gray would pay to the agent of Uintah and Ouray agency $28 per annum for the use of Niccowree, the allottee, and that he would cultivate all the arable land leased, set out an orchard of not less than 5 acres, seed 20 acres to alfalfa, build a stable, and make other improvements upon the land.   It was signed by Niccowree and Gray, it bore the certificate of the Indian agent of the Uintah and Ouray agency that Niccowree could not personally and with benefit to himself occupy or improve the land, and that the rent was just and fair, and the agent testified that he made the lease.   The lease also bore the written approval of the First Assistant Secretary of the Interior.   The lessee failed to make the improvements he had agreed to make, to the damage of the lessor in the sum of about $1,000.   The foregoing facts were proved without contradiction at the trial, and thereupon the court instructed the jury to return a verdict for the defendants, on the ground that the United States had no capacity to maintain the action, because it did not bring it as the holder of the legal title for injury to its ownership of the land, because it had no pecuniary interest or contractual

right in the matter, and the action was not brought to enforce any legal prohibition or to redress any violation of any law of the United States.

But for more than a century it has been and still is the governmental policy of the United States to exercise the power granted to it by the Constitution (article 1, § 8, subd. 3) to protect the Indians and their property from the greed, rapacity, cunning, and perfidy of the members of the superior race, which have so often driven them to poverty, despair, and war, and to teach and persuade them to abandon nomadic habits and to adopt and practice the arts of civilization. In order to carry out this policy it has reserved and held in trust for them large tracts of land and large sums of money derived from their release of their rights of occupancy of their lands in this country, it has controlled and managed their property for them, it has furnished them with houses, barns, and other permanent improvements, with domestic animals, means of subsistence, and money in small amounts. It has provided them with government agents to advise them and to protect their property, and with physicians, farmers, schools and teachers to instruct them. And while, under the act of 1887, Niccowree has become a citizen of the United States and subject to its laws and the laws of the state in which he resides (24 Stat. 390, § 6), the United States is still pursuing its policy of protection and instruction, and his property is still in charge of the Indian agent of the Uintah and Ouray agency.

The civil and political status of the Indians does not condition the power of the government to protect their property or to instruct them. Their admission to citizenship does not deprive the United States of its power, nor relieve it of its duty, to control their property, to protect their rights to it from the rapacity and faithlessness of the members of the superior race, to discharge faithfully its legal and moral obligations to them, and to execute every trust with which it is charged for their benefit. Matter of Heff, 197 U. S. 488, 509, 25 Sup. Ct. 506, 49 L. Ed. 848; United States v. Thurston County, 143 Fed. 287, 289, 74 C. C. A. 425; Tiger v. Western Investment Co., 221 U. S. 286, 316, 31 Sup. Ct. 578, 55 L. Ed. 738; United States v. Logan (C. C.) 105 Fed. 240, 241; Eells v. Ross, 64 Fed. 417, 420, 12 C. C. A. 205; United States v. Mullin (D. C.) 71 Fed. 682, 685.

It has been and still is the policy of the United States to protect the property and the rights of the Indians under its control, and to teach them agriculture and the arts of civilized life. The Indian reservations, the funds derived from the lease of their right of occupancy to their lands, the lands allotted to the individual Indians, but still held in trust by the United States during the period of restriction upon alienation, the leases of these lands made by the Indian superintendents or agents on the terms and conditions fixed by the Secretary of the Interior and approved by him, the tools, animals, houses, improvements, and other property furnished to these Indians by the United States, and the proceeds and income from all these, are the means by which the nation pursues its beneficent pol-

icy of protection and instruction and exercises its lawful powers of government. If one threatens or proceeds to destroy these means, may not the United States resort to its own courts to prevent such destruction, or to recover the damages caused thereby?, "Every government, intrusted, by the terms of its being, with powers and duties to be exercised and discharged for the general welfare, has a right to apply to its own courts for any proper assistance in the exercise of the one and the discharge of the other, and it is no sufficient answer to its appeal to one of those courts that it has no pecuniary interest in the matter." In re Debs, 158 U. S. 564, 584, 15 Sup. Ct. 900, 906 (39 L. Ed. 1092).

The United States may maintain a suit to prevent the officers of a state from subjecting any of these means, whether they consist of real property or of personal property, to taxation for state or county purposes. United States v. Rickert, 188 U. S. 432, 443, 444, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Thurston County, 143 Fed. 287, 289, 74 C. C. A. 425, 427. It has capacity to sue to avoid conveyances made by Indian allottees in violation of restrictions upon alienation, although it has no pecuniary interest therein, or in the land conveyed. It has this right to sue, because such conveyances violate its governmental rights and hinder or prevent the execution of its governmental policy. Heckman v. United States, 224 U. S. 413, 438, 32 Sup. Ct. 424, 56 L. Ed. 820; United States v. Allen, 179 Fed. 13, 103 C. C. A. 1; Wright v. United States (C. C. A.) 196 Fed. 1007; Bowling v. United States, 111 C. C. A. 561, 191 Fed. 19. On the same ground it may maintain suits to cancel leases procured from Indian allottees without the required approval of the Secretary of the Interior. United States v. Flournoy Live Stock & R. E. Co., 69 Fed. 886, 892, 893, 894; United States v. Noble, (C. C. A.) 197 Fed. 292. And it has capacity to sue to enforce and protect the treaty right of Indians to fish in waters outside Indian reservations. United States v. Winans (C. C.) 73 Fed. 72, 75.

The breach by lessees of their covenants in leases with Indian allottees, the terms and conditions of which were prescribed and approved by the Secretary pursuant to the act of Congress, obviously may be as effective to violate the governmental rights of the United States, and to hinder or prevent the execution of its policy of protection of the property rights of the Indians under its charge, it may be as effective to deprive the Indians of their rights and to pauperize them as the violation of the restriction on the alienation of their lands or the procurement of unauthorized leases, and for the same reason that the United States has capacity to sue to avoid the latter it has capacity to sue to recover the damages caused by the former. The Indians themselves are practically helpless in either case, and unless the United States may sue to protect and enforce their rights they will be disregarded with impunity. Our conclusion is that the United States has capacity to sue to recover damages for the breach of a lease made by an Indian allottee with the approval of the Secretary of the Interior, or to protect or enforce any other property right of such a lessor which remains under the control and

supervision of the Secretary or the Indian agent, his subordinate, because such suits are necessary to protect and enforce the governmental rights of the United States and its governmental policy to protect the property rights of the Indians and to teach them the arts of civilized life.

The judgment below must accordingly be reversed, and the case must be remanded to the District Court, with instructions to grant a new trial; and it is so ordered.