### UNITED STATES v. FITZGERALD.

(Circuit Court of Appeals, Eighth Circuit. October 21, 1912.)

No. 3,716.

*(Syllabus by the Court.)*

1. INDIANS (§ 23*)—PERSONAL PROPERTY—CAPACITY OF UNITED STATES TO SUE FOR WRONGFUL TAKING.

The United States has capacity to sue for the fraudulent or wrongful taking from an Indian of his personal property held by him subject to the control and management of an Indian agent, because such a taking infringes its governmental rights, obstructs the execution of its governmental policy, and interferes with the lawful means it uses to carry it into effect.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 15; Dec. Dig. § 23.*]

2. INDIANS (§ 6*)—CITIZENSHIP—GOVERNMENT CONTROL OF PROPERTY.

The admission of Indians to citizenship does not necessarily withdraw their property from the control and management of the United States, or relieve it from the duty to protect such property from the force, fraud, and wrong of the superior race, and to redress its wrongful taking or injury.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 12; Dec. Dig. § 6.*

Admission of Indians to citizenship, see note to United States v. Allen, 103 C. C. A. 13.]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Action by the United States, as guardian of Towanta, an Indian, against Riley Fitzgerald. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Hiram E. Booth, U. S. Atty., of Salt Lake City, Utah (Wm. M. McCrea, of Salt Lake City, Utah, on the brief), for the United States.

Before SANBORN and CARLAND, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. The United States brought this action against the defendant, Fitzgerald, for damages for the wrongful taking by him from the Indian, Towanta, of certain sacks of wool that had been sheared from the latter's sheep. The facts set forth in the complaint were these: Towanta was an Indian allottee, located on a

---

part of the former Uintah Indian reservation, to whom personal property had been issued by the United States from time to time to induce him to adopt the habits of civilized life. His allotment and his personal property had been under the control, supervision, and management of the United States, and under the direct management and control of the Indian agent of the Uintah and Ouray agency, and to this management and control Towanta had agreed. Under this agreement, and the rules and regulations of the Interior Department, Towanta had no right or authority to sell or otherwise part with any of his personal property without the consent of the Indian agent, who had the management and control thereof. Towanta had a large number of sheep under the management and control of the Indian agent, which he grazed on the lands within the former Indian reservation. Fitzgerald, without the consent of the Indian agent, by means of fraud and deceit practiced on Towanta, obtained from him and took possession of certain sacks of wool, for which he paid nothing, worth $250, that had been sheared from these sheep, and upon demand he refused to return this wool or to pay for it. It is assigned as error that a demurrer to this complaint was sustained on the ground that the United States had no capacity to sue for the damages claimed therein.

[2] Assuming that under Act February 8, 1887, c. 119, 24 Stat. 390, § 6, the Indian allottee had become a citizen of the United States and of the state of Utah, his admission to citizenship did not necessarily withdraw him or his property from the supervision, control, and protection of the United States. Matter of Heff, 197 U. S. 488, 509, 25 Sup. Ct. 506, 49 L. Ed. 848; United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Thurston County, 143 Fed. 287, 289, 74 C. C. A. 425, 427; Tiger v. Western Investment Co., 221 U. S. 286, 316, 31 Sup. Ct. 578, 55 L. Ed. 738; McKnight v. United States, 130 Fed. 659, 662, 65 C. C. A. 37, 40

[1] The United States has the power, and for more than a century it has been, and still is, its governmental policy, to protect the Indians and their property from the force, fraud, cunning, and rapacity of the members of the superior race, and to teach them the arts and induce them to adopt the habits of civilization. Indian reservations, allotments of land in severalty with restrictions on alienation held in trust for the Indians, leases thereon on terms prescribed or approved by the Secretary of the Interior, agricultural implements, houses, barns, domestic animals, and other property furnished to the Indians by the United States, or held by the Indians subject to its control and management, are the means by which the United States exercises its power and carries into effect its policy to protect these Indians and their rights of property, and to teach them to abandon nomadic habits and become farmers, laborers, clerks, and business men. The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies. It may maintain such suits, although it has no pecuniary interest in the subject-matter thereof, for the purpose of protecting and enforcing its governmental rights and

to aid in the execution of its governmental policies. United States v. Thurston County, 143 Fed. 287, 289, 74 C. C. A. 425, 427; United States v. Flournoy Live Stock & R. E. Co. (C. C.) 69 Fed. 886, 892, 893, 894; United States v. Rickert, 188 U. S. 432, 443, 444, 23 Sup. Ct. 478, 47 L. Ed. 532; United States v. Allen, 179 Fed. 13, 103 C. C. A. 1; Wright v. United States, 196 Fed. 1007; Bowling v. United States, 191 Fed. 19, 111 C. C. A. 561; McKnight v. United States, 130 Fed. 659, 664, 65 C. C. A. 37, 42. A more extended review of the authorities upon and discussion of this subject may be found in the opinion of this court in United States v. Gray, 201 Fed. 291, 119 C. C. A. ——, which is filed herewith.

The taking by the defendant of the personal property of the Indian, Towanta, from him by fraud without the consent of the Indian agent, under whose control, supervision, and management it had been placed for the purpose of protecting it against the fraud and rapacity of members of the defendant's race, was an infringement of the governmental rights of the United States, a hindrance of the execution of its governmental policy, and a wrongful seizure of the lawful means it was using to carry that policy into effect. It was therefore a wrong for the redress of which the United States had the capacity to sue. It may maintain an action for damages for the fraudulent taking of the personal property of an Indian allottee, which is under the supervision, control, and management of the Secretary of the Interior, or his subordinate, an Indian agent, and may hold the amount it recovers in trust for the Indians whose property has been taken or injured, because such suits are lawful aids to redress infringements of its governmental rights, obstructions to the execution of its governmental policy, and interference with the means it is using to carry that policy into effect.

The judgment below must accordingly be reversed, and the case must be remanded to the District Court, with instructions to permit the defendant to answer and to take further proceedings in accordance with the views expressed in this opinion.

It is so ordered.