## PICKENS *v.* BAKER.

Opinion delivered September 28, 1931.

F. O. *Butt*, L. M. *Poe*, E. J. *Lundy*, R. E. *Morgan* and H. R. *Duncan*, for appellant.

SMITH, J. This appeal is from a decree which sustained a demurrer to a complaint containing the following allegations. The plaintiff recovered a judgment against defendant, which has become final and absolute, but which he has been and is now unable to collect. Defendant is a resident of the Western District of Carroll County, and the complaint was filed in the chancery court of that district.

The defendant possesses and owns two Osage headrights, one allotted her by reason of her being a member of the Osage tribe of Indians, and the other was acquired under the will of her deceased husband, who was also an Osage allottee.

The defendant is an Osage allottee of less than half-blood, and there has been issued to her a certificate of

competency long prior to the incurring of the indebtedness which plaintiff is attempting through this proceeding to collect.

That defendant receives, through such Osage headrights, an annuity, payable in quarterly installments, amounting to several thousand dollars each year, which, if impounded and applied to the payment of plaintiff's judgment, would soon discharge it.

It was prayed that defendant be enjoined from selling, assigning or transferring her interest in said headrights, and that a receiver be appointed to collect and receive the proceeds from such headrights, with directions to apply the same to the satisfaction of plaintiff's judgment.

The court below was of the opinion, as expressed in the decree, that if a receiver were appointed by the court no authority could be conferred upon him to collect funds that are being administered as a trust in the State of Oklahoma under the acts of the Congress of the United States, without the permission of such law-making authority, and that no such grant of authority had been given. The court therefore refused to appoint a receiver as prayed, and this appeal was prosecuted to reverse that decree.

The "Laws relating to the Osage Tribe of Indians" from May 18, 1824, to March 2, 1929, have been compiled by Mr. R. A. Barney and published in a book under the title of the language above quoted, but a summary of these laws, in so far as they relate to the creation and nature of the headright of an Osage Indian, is contained in the opinion in the case of In re Denison, 38 Fed. (2d) 662.

It is recited in this opinion that at the time of the passage of the Osage Allotment Act of June 28, 1906 (34 Stat. 539), the Osage Indians were occupying as a tribe their reservation in Oklahoma Territory containing approximately a million and a half acres of land largely underlaid with oil, gas and other minerals, and that the Government then held in trust for the two

thousand or more members of the Osage Tribe a fund of over eight million dollars received and held under various treaties as compensation for the relinquishment of other lands. This Allotment Act reserved the oil, gas, coal and other minerals to the Osage Tribe for a period of twenty-five years from and after the 8th day of April, 1906, as a trust to be administered by the United States Government, and by subsequent legislation this trust has been extended to April 8, 1958.

Legislation relating to this tribe of Indians removed the restrictions on Indians of less than one-half Indian blood except as to the trust estate held by the Government belonging to the tribe, and provided the manner of payment of quarterly annuities to non-competents and for the payment to those having certificates of competency of their portion of the fund as it accumulated.

The Denison and other cases defined an "Osage headright" to be the interest which a member of the tribe has in the Osage tribal trust estate, which trust consists of the oil, gas and mineral rights, and the funds which were placed to the credit of the Osage Tribe under Federal legislation relating to that tribe. The Federal Government has granted leases for the exploration and recovery of oil, upon which royalties are being collected and held in trust for the owners of these headrights.

The complaint alleges that the defendant is an Osage Indian of less than one-half blood and the possessor of a certificate of competency, which accorded to her full authority to manage her own business.

In the Denison case, *supra*, it was said that: "The only distinction as to alienation of property, between an Osage Indian of half blood or more and an Osage Indian of less than half blood, is that Osage Indians of half blood or more may have certificates of competency issued to them upon application, and in the discretion of the Secretary of the Interior (§ 2, par. 7, act of June 28, 1906, 34 Stat. 542), while all restrictions against the alienation of their allotment selections, both surplus and homestead, of all adult Osage Indians, of less than

one-half Indian blood, have been removed. Section 3, Act of Congress, March 3, 1921, amendatory of § 3, Act of Congress, June 28, 1906.''

It was there also said: ''An adult Osage Indian of half blood or more, with a certificate of competency has the right to sell and convey any lands deeded to him by reason of the act of June 28, 1906, except his homestead, while an Osage Indian of less than half Indian blood has the right to sell both his surplus and homestead. A 'competent' Osage Indian is one having a certificate of competency.

''The word competent has been defined as follows: 'The word ''competent'' as used in this act, shall mean a person to whom a certificate has been issued authorizing alienation of all the lands comprising his allotment, except his homestead.' Section 9, Act of April 18, 1912, 37 Stat. 86; *McCurdy* v. *U. S.*, 246 U. S. 263, 38 S. Ct. 289, 62 L. Ed. 706.''

The Denison case was one which involved the question whether an Osage headright of an Indian who had filed a voluntary petition in bankruptcy constituted an asset of the bankrupt, to be administered by the trustee in bankruptcy as the other assets of the bankrupt. In an opinion reviewing much of the legislation on the headrights of Osage Indians, it was held in the Denison case that ''Nowhere in the Act of 1906, or by an amendment thereto, does an Osage Indian of less than half blood with a certificate of competency, or with restrictions removed, have the right to dispose of his trust fund or his trust estate. Congress has the right at any time to modify the provisions for holding or disposing of the trust estate of the Osages. The whole purpose of Congress has been to protect the Indian, and provide for his maintenance, his education and his care, and the trust estate cannot be affected by any obligations created by the Indian, even though he has a certificate of competency.''

It was there further said: ''This does not, even by implication, empower him to sell his interest in a trust estate. Congress has provided that at the termination

of the trust period, whenever it may be, the interest of the individual Indian shall be delivered to him intact. *United States* v. *Thurston County*, (C. C. A.) 143 F. 287. Could Congress do this if taxes could attach or if liens could attach by virtue of judgments and obligations of any character? If the so-called Osage 'headright' is an estate in bankruptcy, then every Osage Indian, having had issued to him a certificate of competency, could absolutely defeat the original purpose of Congress. It would be an easy matter for him to incur obligations either in good faith, or otherwise, and through a bankruptcy proceeding destroy the control which the Government exercises over his trust estate and through the bankruptcy proceeding get control of same himself.''

It followed, of course, from these declarations that the headright of an Indian did not constitute an asset of the bankrupt, to be administered by the trustee in bankruptcy, and the court so expressly held.

It was held by the Supreme Court of the United States in the case of *Choteau* v. *Burnet, Commr. of Internal Revenue,* decided May 25, 1931, 283 U. S. 691, 51 S. Ct. 598, that a member of the Osage Tribe of Indians holding a certificate of competency was liable for the income tax on his share of the income paid him for tribal mineral leases. But in an opinion in the case of *Taylor* v. *Tayrien,* by the United States Circuit Court of Appeals for the Tenth Circuit, 51 Fed. (2d) 884, it was pointed out that the Choteau case dealt only with moneys actually paid to and in possession of the individual Indian, which were his own to do with as he pleased.

This case of *Taylor* v. *Tayrien* involved the single question whether the headright of an Osage Indian of less than half blood, with a certificate of competency, passed to his trustee in bankruptcy. The court held that it did not. This case of Taylor sets out and approves an opinion, dated August 15, 1922, by the Solicitor of the Department of the Interior on the right of members of the Osage Tribe of Indians to assign oil and gas royalties. The solicitor concluded his opinion as follows: ''True,

individual members did obtain a prospective right to share in the periodical distributions of royalties received from leasing the deposits mentioned, after certain authorized deductions therefrom had first been made. In the absence of specific legislation by Congress, which has not been had, prospective rights of this nature, even in the hands of those members of the tribe who have received 'certificates of competency' or the restrictions against alienation of whose lands have otherwise been removed, are not assignable. * * * Payments of these funds in any other manner, or to persons other than as authorized by these statutes, is not warranted. * * * Again, and speaking generally, funds in the hands of administrative officers of the government, whether for the benefit of Indians or otherwise, are not subject to attachment, levy, sale, execution, assignment, etc., in the absence of express legislation by Congress to that effect.

"'I find no difficulty therefore, in holding that members of the Osage Tribe, including those to whom certificates of competency have been issued or whose restrictions have otherwise been removed, are without power to assign their right to share in the oil and gas royalties and other funds accruing to them as members of that tribe, and that such funds, as and when due, can be paid only to such of these allottees or their heirs as may be competent; the shares due incompetent members to be further administered for their benefit, as specifically provided for in the act of March 3, 1921."

Upon a consideration of these authorities, we have concluded that the chancellor properly refused to appoint a receiver in this case. The property of which the court is asked to take possession is not within the jurisdiction of the court, but is in another State and is there being administered as a trust under the Federal statutes above referred to for the benefit of all the members of the Osage Tribe.

The decree of the court below will therefore be affirmed, and it is so ordered.