AUGUSTA T. VORSE v. THE DES MOINES MARBLE AND MANTEL COMPANY, Appellant.

**Landlord and Tenant:** TAXES. Acts Twenty-first General Assembly, chapter 168, sections 17, 18, provide that when the owner of any lot, the assessments against which are embraced in a certificate for street improvements, shall promise in writing on the certificates that, in consideration of the right to pay in installments, he will waive any illegality, and will pay the same with interest, he shall be subject to the provisions of the act authorizing such payments in installments *Held,* that where a lease of a lot provided that the lessee would pay all assessments for street improvements levied during the term, the lessee could not, as between him and the lessor, extend the time of payment by executing such writing.

**SAME:** *Maturity.* Where the assessments were made during the last year of the lessee's term, it could not, by executing such promise, evade liability for such installments after the first.

**PRINCIPAL AND SURETY.** The payment by the lessor of the amount of a street paving assessment levied against the property during the term is not a condition precedent to an action by him to recover the amount thereof from the lessee, under a provision of the lease requiring the latter to pay such assessments, as the rule that a surety has no right of action against his principal until he has paid the debt, does not apply.

**SAME.** It is not a valid objection to the right of the lessor to maintain a suit for the amount of assessments not paid by the lessee that the lessor is not the real party in interest, because not primarily liable.

**REMOVAL OF IMPROVEMENTS.** A lease for a certain term, expiring March 1, 1894, provided that the lessor, at the expiration of the lease, should pay for improvements placed on the lot, what they were reasonably worth to tear down, and for arbitration if the parties could not agree, or the lessee might remove the improvements. On February 1, 1894, the lessee attempted to agree with the lessor as to the amount to be paid, and failed. On February 10 the lessee asked for an arbitration. An attempt to arbitrate extended to April 10, when, without the lessee's fault, it failed. The lessee vacated the premises in February, and notified the lessor of such fact, March 1, and removed such improvements

within a reasonable time after April 10, 1894. *Held*, that the lessee was not liable for rent from March 1, 1894, to the time of his removal.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

### THURSDAY, JANUARY 27, 1898.

JANUARY 22, 1884, other parties executed a lease to a certain lot in the city of Des Moines, Iowa, to which lease the parties to this suit have succeeded in interest, the plaintiff as lessor, or party of the first part, and the defendant as lessee, or party of the second part, and a consideration of the case does not require a reference to other parties. The lease provided that the lessee should pay, aside from the annual rental, all taxes and assessments of every kind and nature, that might be assessed against said lot, including street paving and curbing, during the continuance of the lease. The term of the lease was from March 1, 1884, to March 1, 1894. During the year 1893 four assessments were made against the lot, two for curbing and two for paving. For all of such, paving certificates were issued, and on the back of each the defendant signed a written waiver and agreement, under the law for making such assessments payable in installments instead of all at one time. The first installment of the assessment was paid by defendant, March 3, 1894, but it denies any liability for the payment of the balance of the assessments, and this action is, in part, to recover such amount. Plaintiff also seeks to recover for rent after the expiration of the lease, the facts as to which can better be stated in connection with the consideration of the question. The district court gave judgment for plaintiff on both claims, and the defendant appealed.—*Modified and affirmed.*

*McVey & McVey* for appellant.

*Davis & Davis* for appellee.

GRANGER, J.—I. We notice first the question as to defendant's liability for the unpaid balance of the assessments. The facts in the case are so far stipulated that there is really no question of fact at issue. As much importance, in argument, is attached to the fact of the assessments being payable in installments, it may be well to at once consider the law on that subject, and ascertain how the assessments are affected by it. It is appellee's claim that as to her, at least, there is no such right, because she is the owner of the lot, and only the owner can, under the law, make the waiver and agreement by which such right is obtained. The following are sections 17, 18, chapter 168, Acts Twenty-first General Assembly.

"Sec. 17. Whenever the owner or owners of any lot or lots, the assessment or assessments against which is or are embraced in any such certificate, shall severally promise and agree in writing endorsed on such certificate that, in consideration of having the right to pay his or their assessment or respective assessments in installments, they will not make any objection of illegality or irregularity as to their respective assessments, and will pay the same with interest thereon, * * * he or they shall have the benefit and be subject to all the provisions of this act authorizing the payment of assessments in annual installments relating to the lien and collection and payment of assessments so far as applicable.

"Sec. 18. Any owner of any lot or lots assessed for payment of the cost of any such improvements, who will not promise and agree in writing as provided by

section seventeen hereof, shall be required to pay his assessment in full, when made, and the same shall be collectible by or through any of the methods provided by law for the collection of assessments for local improvements, including the provisions of this act."

It will be seen that the right of payment by installments is not primary or absolute, but conditional, and based on an undertaking in writing to waive legal objections and pay absolutely the principal and interest. The form of agreement on the back of each certificate is as follows: "I, ————, in consideration of having the right to pay the assessment mentioned in the within certificate in installments, as provided by law, do hereby agree that I will not make any objections of illegality or irregularity as to said assessment, and that I will pay the same, with interest thereon at the rate of six per cent. per annum, and all penalties, as provided by law, from the date of said assessment." The defendant signed this agreement on each certificate, because of which a payment in full at one time was avoided and annual payments permitted. The law says the owner of the lot may make this agreement. Technically, at least, the plaintiff is the owner. It is not necessary that we should say that only the fee title owner is within the meaning of the statute, and could make such agreement and waiver. Certain it is that none other is such owner, and can make the agreement, if only the fee title owner is obligated for the payment. The effect of the agreement made by defendant was to postpone payments for which it asserts, in this suit, it is in no way liable. Because of its own act, in making the assessment payable in installments, instead of at once, it argues that the lease only contemplates payments of taxes within the years of occupancy, and not future years. The difficulty is that this assessment was all for one of the years of occupancy, and must have

been paid as such, had defendant not engaged, in writing to pay it later. If it was an assessment for 1893, payable at one time, it was, confessedly, the defendant's obligation. That it was so, independent of defendant's agreement, admits of no doubt. Could defendant shift the obligation by such agreement? We do not argue the proposition.

Thus far we have considered defendant's liability without determining the significance of the word "owner" in connection with its right to make the agreement and secure the right of payment by installments. Another proposition in the case is as to the validity of the judgment for the full amount; for, in fact, when the suit was commenced, no other installment was due, and, if defendant's agreement is valid as to the plaintiff, there could be no right of recovery. As between a lessee, liable for such assessments, and the public or a certificate holder, there are considerations that suggest a construction of the law favorable to the lessee. There are not the same considerations as between the lessee and lessor. This payment of assessments and taxes is in the nature of rental for the use of the lot, and we are not to assume that the amount actually to be paid is not what the parties contemplated; that is, they contracted with reference to what might or might not be done, and the amounts to be paid would be greater or less, according to the facts as to which they contracted. There is nothing to indicate that, as between the parties to the lease, all liabilities were not to be paid, as plaintiff would have to pay them to protect her property, under the law, independent of any agreement she might make for further time. We think a construction of the lease fixes the rights of these parties in this respect. If this agreement of defendant's must bind plaintiff, then her property must stand subject to the lien for seven years, and her security must be the personal responsibility of defendant during that time. We adhere to the rule

that defendant's liability for payment of assessments was when they became due under the law, for the law becomes a part of the lease, and all is to be considered in reaching a conclusion. As we have said, these assessments were primarily all due and payable at one time. Without the provision as to the agreement to waive objection and secure time, there would be no question that the payment must be so made. When the lease was made, the act giving the right of payment in installments had not been enacted; but, of course, the parties contracted with reference to the law as it would be in relation to such assessments. We think it is not to be properly said that the intent of the law was, in the use of the word "owner," to give such a lessee the right to extend the time of payments that would otherwise be due under the terms of the lease.

II. It is urged that plaintiff cannot recover because she has not paid the assessments. The claim is made relying on the rule, as to principal and surety, that a surety has no right of action against his principal in respect to a debt for which he is surety until he has paid the debt for his principal. A different rule is applicable here; that, wherein one party agrees not to be surety for, but to absolutely pay the debt of, another, so that, as between the two, such party is primarily liable. We said in *Stout v. Folger*, 34 Iowa, 71, that "the authorities agree that, upon an undertaking to pay a debt due a third person, the plaintiff may maintain an action without showing that he has paid the debt." See *Bacon v. Marshall*, 37 Iowa, 581; *Lyon v. Aiken*, 70 Iowa, 16.

III. It is thought that plaintiff is not the real party in interest, so as to maintain the suit, because she is not the one primarily liable. The assessment is a lien on the lot, and, if the assessment is not paid, the lot may be sold to pay it, and it is to protect her property that she brings the suit based

on defendant's breach of contract.   Her interest is direct and enforceable.

IV.   The lease contemplated that the lessee should make improvements on the lot, and at the expiration of the lease, the same should be paid for or removed.   The lease expired March 1, 1894.   The following is a provision of the lease: "It is also herein further mutually agreed that, at the expiration of this lease, the party of the first part shall pay, for the improvements placed on said lot by the party of the second part, an amount equal to what said building or buildings shall be reasonably worth to tear down and use in the construction of a new building.   If the parties hereto cannot agree as to said amount, each party shall choose a competent person, and these two a third party, the three to fix the amount to be paid, or the party of the second part may remove the said improvement from the said premises."   The defendant ceased to occupy the lot in February, 1894, and on the first of March gave written notice to that effect.   Its buildings, however, were not removed till June 1, 1894, and a part of the judgment is for rental from March 1 to June 1.   Appellant thinks such judgment erroneous.   The following facts are stipulated:   "(6) That prior to the first day of February, A. D. 1894, these defendants attempted to agree with the plaintiff as to the value and reasonable worth of the buildings upon said premises, but were unable so to agree; whereupon, on the tenth day of February, 1894, these defendants gave notice to plaintiff that they wished to submit the question of reasonable worth of said buildings to competent persons for determination, as provided in said contract (Exhibit A), and further notified said plaintiff at said time that these defendants were ready and willing to name a competent person to act for them.   That on the twentieth day of February these defendants and the plaintiff appointed two persons to act for them.   The plaintiff

named Samuel Saucerman and the defendants Charles
Cross. That said persons could not agree upon the
worth of said building, and proceeded to choose an
umpire, or third person, and that said Saucerman
refused to consider any person other than three, to-wit,
George Garver, David Ewing, and L. M. Mann, and
said to Charles Cross that he would not consider any
other person or persons to act as umpire except these
three. That said Charles Cross submitted many names
of competent persons, and made every effort to agree
with said Saucerman on some competent person, but
was unable to do so, and finally it was agreed on the
twenty-eighth day of March that George Garver should
act as umpire, and said parties proceeded to appraise
the worth of said buildings, but did not make any report
until the tenth day of April, and, the parties hereto then
being unable to agree, these defendants determined to
remove said buildings and at once proceeded to let the
contract for the removal of said building, and said
building was removed from said premises by the first
day of June, 1894, and that said lot was entirely cleared
of said building on said last-named date. The defend-
ants say that they vacated said premises and removed
their business therefrom prior to the fifteenth day of
February, 1894, and notified said plaintiff on the first
day of March, 1894, that they had vacated said prem-
ises." Some evidence shows the diligence used to
remove the buildings. The lease contemplates that, as
to the buildings, the parties may, first, agree as to their
value; second, they may select persons to fix the value;
and, third, the defendant might remove them. As we
understand, the time to commence this adjustment was
"at the expiration of the lease." There could be no
payment until the amount was known, and two ways
are provided for knowing it. The time of ascertain-
ment was when payment could be required. Defendant
was no more to anticipate a failure of adjustment as to

price than was plaintiff. However, as early as February 1, it attempted to agree with plaintiff and failed. Defendant then, February 10, asked for a determination by the other method, which failed. This attempt was extended to April 10, when it proved unsuccessful, and with no fault on the part of defendant. Thus far defendant had been guilty of no breach of the terms of the lease. Beyond this, it was entitled to a reasonable time to remove the improvements. Without the provisions as to paying for the improvements, defendant would have been entitled to a reasonable time after the expiration of the lease to remove them. See *Smith v. Park*, 31 Minn. 70 (16 N. W. Rep. 490); *Sullivan v. Carberry*, 67 Me. 531. The rule is a familiar one. Because of the provisions as to agreeing upon the amount to be paid, if defendant was not in fault because of delays in trying to agree, he would be entitled to a reasonable time for removal after there was a failure to agree. The lease does not provide that such things should be done before the expiration of the lease, nor does it provide for rent after such expiration, and the law does not fix such a right, unless the delay is unreasonable. The rule stated in section 22, 1 Taylor, Landlords and Tenants, is not in point. There the tenant was holding over because his improvements were not paid for. Here there was no holding over in such a sense, but merely an occupancy for the removal of improvements, under the terms of the lease. The judgment will be modified to conform to this holding, and, thus modified, it will stand affirmed. The plaintiff will pay her own costs in this court and the cost of defendant's witnesses in the court below.— AFFIRMED.