FINK ET AL., TRUSTEES &c., *v.* BOARD OF COUNTY COMMISSIONERS OF MUSKOGEE COUNTY, OKLAHOMA, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF OKLAHOMA.

No. 43. Argued December 13, 16, 1918.—Decided January 13, 1919.

Through the Act of May 27, 1908, c. 199, 35 Stat. 312, restrictions on alienation were removed from a Creek Indian allotment which, under the Creek Supplemental Agreement of June 30, 1902, c. 1323, § 16, 32 Stat. 500, and the Oklahoma Enabling Act and Constitution, was exempt from taxation. The Act of 1908 provides "that all land from which restrictions have been or shall be removed shall be subject to taxation," etc. Upon conveyance by the allottee, *held,* that the tract was subject to state taxation in the hands of the grantees, for by taking their title under the Act of 1908 they took subject to its conditions and policy. P. 402.

The Act of May 27, 1908, *supra,* granting the right of alienation, invades no right of the Indian in making the exercise of that right a surrender of the exemption from taxation. P. 404.

*Quære* as to how far a grantee of an Indian may avail himself of the Indian's right to assert the unconstitutionality of an act of Congress. P. 405.

59 Oklahoma, ——, affirmed.

THE case is stated in the opinion.

*Mr. Charles B. Rogers,* with whom *Mr. W. O. Cromwell* and *Mr. George W. Buckner* were on the briefs, for plaintiffs in error.

*Mr. S. P. Freeling,* Attorney General of the State of Oklahoma, with whom *Mr. R. E. Wood* and *Mr. Hunter L. Johnson,* Assistant Attorneys General of the State of Oklahoma, and *Mr. W. W. Cotton* were on the brief, for defendants in error.

*Mr. Edmund Lashley,* by leave of court, filed a brief as *amicus curiæ.*

Mr. Justice McKenna delivered the opinion of the court.

The question in the case is whether land allotted to an Indian of the Creek Tribe exempt from taxation in the hands of the Indian is exempt in the hands of a purchaser from the Indian.

Considering that the land was so exempt, in other words, that the exemption went with the land, in subsequent hands, the suit was commenced by plaintiffs in error, here called plaintiffs, to restrain the collection of taxes upon part of the land which had become lots in the town of Muskogee. There was a demurrer to the petition by defendant in error, here called defendant, which by stipulation of counsel was submitted solely on the question of exemption, other questions being reserved.

The stipulation recited that plaintiffs sought an injunction against the taxes assessed or hereafter assessed against the lots for the reason that they had been a part of the homestead of Eliza J. Murphy, a Creek Indian allottee and a citizen and member of the Creek Tribe or Nation, and for that reason the lots were exempt from taxation for the period of twenty-one years from the date of the deed or patent.

The District Court overruled the demurrer and enjoined the collection of the taxes. The judgment was reversed by the Supreme Court and the plaintiffs then

dismissed their petition as to all other grounds of relief than that the taxes "were illegal and void because prohibited by the contract, constitution, laws and treaties of the United States."

A petition for rehearing was denied and a judgment entered sustaining the demurrer and dismissing the petition.

The elements of decision are certain acts of Congress, the deed to Eliza J. Murphy, her deed to plaintiffs, and certain provisions in the constitution of the State of Oklahoma.

The lands of which the lots involved were a part were allotted to Eliza J. Murphy by virtue of the Act of Congress of March 1, 1901, and that of June 30, 1902 (31 Stat. 861; 32 Stat. 500). The latter act is known as the Creek Supplemental Agreement and provides (§ 16) that an allotment shall not be encumbered or subject to forced sale for five years, except with the approval of the Secretary of the Interior. And the section requires that each citizen of the Tribe "shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear."

A deed was made to Eliza J. Murphy on April 20, 1903, and, following the statute, expressed the non-taxability and inalienability and freedom from incumbrance for the designated period of exemption.

There were provisions in the Enabling Act of the State under which its constitution was drawn which preserved the rights of persons and property of the Indians so long as such rights should remain unextinguished and provided that nothing in the constitution should be construed to limit or affect the authority of the United States respect-

ing the Indians, their lands, their property or their rights.
And the constitution exempted from taxation such prop-
erty as might be exempt by reason of treaty stipulations
existing between the Indians and the United States or
by federal laws during the force and effect of such treat-
ies and laws. Plaintiffs rely on these provisions and the
deed to Eliza J. Murphy for their contentions, fortified,
they assert, by decisions of this court.

To the contentions defendant opposes the Act of Con-
gress of May 27, 1908, c. 199, 35 Stat. 312, which removed
the existing restrictions on the homestead allotment,
thereby enabling the allottee to sell the land, and which
provides ". . . . that all land from which restrictions
have been or shall be removed shall be subject to taxa-
tion and all other civil burdens as though it were prop-
erty of other persons than allottees of the Five Civilized
Tribes."

The contention based on this act is that by the Creek
Supplemental Agreement, *supra*, the non-taxability and
inalienability and freedom from incumbrance of the land
were correlatives and to a certain extent, therefore, in-
terdependent, a combination of limitations and rights,
and as they existed together they disappeared together.
And their co-existence depended upon the Indian and
because it did there was no limitation or infringement of
rights or impairment of contract. Plaintiffs, it is further
contended, are in no better situation, as they only got
title by virtue of the Act of May 27, 1908, removing the
restriction upon alienation and they cannot avail them-
selves of it and repudiate it at the same time.

The Supreme Court of the State yielded to these con-
tentions and gave special effect to the Act of 1908 which
it considered "a comprehensive revision of the laws re-
lating to the Five Civilized Tribes and their lands,"
that by it "the free right of alienation was granted,"
and as the plaintiffs "took their title to the lots they are

seeking to exempt from taxation by virtue of the terms of this act, they cannot go behind it. But for that act they could not have purchased the lands in question. They took subject to all the conditions of that act, and they cannot now claim the benefits of the exemption from taxation granted to the allottee by the Creek Supplemental Agreement. *Goudy* v. *Meath,* 203 U. S. 146."

In resistance to the contentions of the defendant and the conclusions of the court, plaintiffs adduce *Choate* v. *Trapp,* 224 U. S. 665, and certain cases decided upon its authority, that is, *Gleason* v. *Wood, id.* 679; *English* v. *Richardson, id.* 680.

*Choate* v. *Trapp* has not the extent assigned to it. In that case the State of Oklahoma undertook to tax lands which were yet in the hands of the Indians, asserting the right simply because of the removal of the restrictions upon alienation by the Act of May 27, 1908, *supra.* The reply of this court was that the law (Curtis Act of June 28, 1898, 30 Stat. 505) as modified by the Act of July 1, 1902, c. 1362, 32 Stat. 641, provided that all of the lands allotted should "be nontaxable while the title remains in the original allottee." There was no question in the case, and could not be, of the effect of alienation—an exercise of the right conferred by the Act of May 27, 1908, and the consequence of such exercise. It is true it was said that "exemption and non-alienability were two separate and distinct subjects" and that "one conferred a right and the other imposed a limitation." The distinction was apt for that case. The State contended that there was no tax exemption but that that provision was only directed against the absolute alienation of the land. This was, in effect, a contention that the power of alienation unexercised was the same as the power exercised, and to correct this confusion it was declared that the provision exempting from taxation was a property right. But it was a property right in the Indian, preserved to him not only

for his own interest but in the interest of the policy of the
United States regarding him. *Kansas Indians*, 5 Wall.
737; *United States* v. *Rickert*, 188 U. S. 432; cases cited in
*Choate* v. *Trapp*. At first his interest was put beyond his
control; by the Act of May 27, 1908, it was committed
to his control, this also satisfying the policy of the United
States under the changed conditions. It invades no right
of the Indian, therefore, to make the alienation of the
land a surrender of the exemption from taxation, and we
concur in the conclusion of the Supreme Court of the
State that plaintiffs having taken title under the act can-
not repudiate its conditions and its manifest policy. *New
Jersey* v. *Wilson*, 7 Cranch, 164, is not in point. We are
not dealing with rights in the abstract; we are dealing with
rights under special conditions and as determined by acts
of the parties under a law of Congress which was availed
of by the Indian and a grantee of the Indian, and which,
therefore, bound them by its conditions and subjected
the land in the hands of the grantee to the usual burdens
of government. It is an error to suppose that this takes
anything of value from the Indian. We may here invoke
the commonplace, for it is commonplace to say that we
only know the value of a thing by that which makes its
worth. Under the restriction against the alienation the
land had no worth but in its uses; the restriction removed,
it had the added worth of exchangeability for other things
—a power of sale was conferred. To say there was no
value in that power is to contradict the examples and esti-
mations of the world. It may be that if exemption from
taxation went with the land it might become an element
in the price (worth in money) which the Indian might
ask and receive, but that was not of concern to the purpose
of the law, which was to give to the Indian all of the at-
tributes of ownership, to give him a mastery of his prop-
erty equal to that of other owners of property, and nothing
more, and this consummated the new policy of Congress.

Further discussion we deem unnecessary, but we may observe that in *Tiger* v. *Western Investment Co.*, 221 U. S. 286, 310, and in *Williams* v. *Johnson*, 239 U. S. 414, 420, 421, a question was intimated whether a grantee of an Indian could avail himself of the Indian's right, if he had any, to assert the unconstitutionality of an act of Congress. Opinion, however, was reserved, and we reserve it here, and rest the case on the grounds we have discussed.

*Judgment affirmed.*