## CARTER OIL CO. v. OKLAHOMA TAX COMMISSION et al.

No. 23551. Oct. 17, 1933.

Jas. A. Veasey, Clay Tallman, L. G. Owen, Guy H. Woodward, Forest Darrough, Wm. H. Zwick, Wm. O. Beall, Paul A. Taliaferro, Hayes McCoy, Victor C. Mieher, W. P. McGinnis, H. J. Patterson, and Archibald Bond, for plaintiff.

C. W. King, for Oklahoma Tax Commission.

W. C. Hall, for defendants.

WELCH, J. By this original action plaintiff seeks to recover back $1,184.93, gross production taxes paid defendant under protest upon seven-eighths of the oil and gas produced by plaintiff from land owned in fee by Jimmie Walker, full-blood Seminole Indian. The remaining one-eighth of the oil and gas or proceeds from the sale thereof belonged to Jimmie Walker and is in no manner involved in this action. The land involved was the 40-acre homestead allotment of Jimmie Walker.

It is conceded that the calculation of the amount of the tax is correct, and that the plaintiff proceeded properly by paying under protest and instituting this action, and the question involved is whether the plaintiff's seven-eighths of the oil and gas produced is subject to the Oklahoma gross production tax of three per cent. upon the value.

The period of time involved is from July 1, 1931, to January 31, 1932. Our statutes provide (section 9814, C. O. S. 1921, section 12434, O. S. 1931) that:

"Every person, firm, association or corporation engaged in the mining or production within this state * * * of petroleum or other crude oil * * * shall * * * pay to the State Auditor a tax * * * equal to three percentum of the gross value of the production of petroleum or other crude or mineral oil, and of natural gas, less the royalty interest."

This provision of law has been construed by the courts and complied with and the tax paid by producers for many years, and the money involved in this case was properly charged against and collected from the plaintiff, unless it be that oil and gas produced by the plaintiff was exempt from this tax on account of the status of the fee title to the land and plaintiff's status as a holder under a "departmental" lease, executed pursuant to acts of Congress and rules and regulations enforced by the proper agency of the federal government in its superintending control over the affairs of its restricted Indian wards.

Jimmie Walker is a full-blood Seminole Indian. The real estate is his homestead allotment and is itself "nontaxable as a home-

stead in perpetuity, subject, however, to all acts of Congress pertaining to or in any way affecting the leasing, incumbrance or alienation of said lands," as provided in his allotment deed which was executed in 1913, pursuant to the appropriate acts of Congress. It is insisted by plaintiff that the oil and gas produced from the land by plaintiff is likewise exempt from taxation. In 1925 Jimmie Walker executed an oil and gas mining lease on the land to Andrew J. Peters. This lease was upon the prescribed "departmental" form and was in the same year duly approved by the Secretary of the Interior. In the following year this lease was assigned to plaintiff, and in due time thereafter the plaintiff developed the property and brought it to the state of production of oil and gas. Section 3 of the Act of Congress approved May 10, 1928 (45 Stats. at L. 495), is as follows:

"That all minerals, including oil and gas, produced on or after April 26, 1931, from restricted allotted lands of members of the Five Civilized Tribes in Oklahoma, or from inherited restricted lands of full-blood Indian heirs or devisees of such lands, shall be subject to all state and federal taxes of every kind and character, the same as those produced from lands owned by other citizens of the state of Oklahoma; and the Secretary of the Interior is hereby authorized and directed to cause to be paid, from the individual Indian funds held under his supervision and control and belonging to the Indian owners of the lands, the tax or taxes so assessed against the royalty interest of the respective Indian owners in such oil, gas, and other mineral production."

The above section was re-enacted February 14, 1931, and supplemented with the following proviso as an amendment thereto, to wit:

"Provided, that nothing in this act shall be construed to impose or provide for double taxation, and, in those cases where the machinery or equipment used in producing oil or other minerals on restricted Indian lands are subject to the ad valorem tax of the state of Oklahoma for the fiscal year ending June 30, 1931, the gross production tax which is in lieu thereof shall not be imposed prior to July 1, 1931." (Stats. U. S. A. passed at the 3rd Session of the 71st Cong. 1930-31, 46 Stat. p. 1109.)

The plaintiff urges that the lease under which the production is obtained is an instrumentality of the federal government, and that the imposition of this state tax is an undue burden on said federal instrumentality. We observe cases cited by plaintiff striking down federal taxes imposed upon an instrumentality of state government, Gillispie v. State of Oklahoma, 257 U. S. 501, 66 L. Ed. 338, decided April 11, 1932; and cases striking down taxes imposed by the state upon a federal agency, Choctaw, O. & G. R. Co. v. Harrison, 235 U. S. 292, 59 L. Ed. 234, 35 Sup. Ct. Rep. 27, decided November 30, 1914; Indian Territory Illuminating Oil Co. v. Oklahoma, 240 U. S. 522, 60 L. Ed. 779, 36 Sup. Ct. Rep. 453, decided April 3, 1916; E. B. Howard, Auditor, v. Gypsy Oil Co. (E. B. Howard, Auditor, v. Indian Territory Illuminating Oil Co.; E. B. Howard, Auditor, v. Okla. Oil Co.; E. B. Howard, Auditor, v. Barnsdall Oil Co.) 247 U. S. 503, 62 L. Ed. 1239, decided May 6, 1918; Large Oil Co. v. Howard, 248 U. S. 549, 63 L. Ed. 416, decided January 27, 1919.

It is clear that the rule is that the federal government and the state government must be each permitted to function through its proper agencies or instrumentalities without undue interference or hindrance from the other. And in keeping with that principle it is reasoned in the decisions above cited, that a federal tax imposed upon a state instrumentality may unduly burden that instrumentality, and that a state tax imposed on a federal instrumentality may unduly burden the same, and therefore that neither federal nor state tax should be permitted to be imposed upon an agency or instrumentality of the other government without the consent of the other government. In Jaybird Mining Co. v. Weir, 271 U. S. 609, 70 L. Ed. 1112, it was held that, "without congressional consent no federal agency or instrumentality can be taxed by state authority." We conclude that it is equally clear that such a tax might be lawfully imposed by and with proper consent. That is to say, that if the federal government makes use of an agency or instrumentality within the boundaries of Oklahoma, the federal government might properly consent to or authorize the imposition of a reasonable tax upon the proceeds or profits collected and realized by a private citizen or corporation by reason of the operation of any such instrumentality. We find no denial of this in reasoning, nor in any of the arguments or citations presented. The consent of the federal government to the imposition of a state tax on a federal instrumentality might be evidenced in other ways, but surely there could be no question but that it could well be evidenced by a clear and unambiguous act of Congress.

Then the reason for the application to this case of the rule in Choctaw, O. & G. R. Co. v. Harrison, supra, and Indian Territory Illuminating Co. v. Oklahoma, supra, must fall

when we consider that since the dates of these decisions Congress has adopted the Act of May 10, 1928, as amended February 14, 1931, as above quoted, thus clearly defining and fixing the policy of the federal government to be that the imposition of such a tax as is here involved is not an undue burden upon or interference with the leasing of these Indian lands for oil and gas. At the time this act was adopted the laws of Oklahoma provided, as heretofore quoted, that every producer of oil and gas within the state should pay a tax of three percentum of the value thereof, less the royalty interest. This congressional act clearly provides that after April 26, 1931, oil and gas produced under lease of the character held by plaintiff in this case shall be subject to all state tax, thus clearly giving congressional sanction to the imposition of this tax upon all of the oil and gas produced, less the royalty interest, or, in other words, a gross production tax on the plaintiff's seven-eighths, or the working interest of the oil and gas produced from this lease.

If the imposition of any tax should, in fact, impose an undue burden, or any burden upon a federal agency or instrumentality, surely the federal government would be most likely to observe and appreciate the burden. In Burnet, Commissioner, v. Corenado Oil & Gas Co., 285 U. S. 393, 52 S. Ct. 443, 76 L. Ed. 815, decided by the United States Supreme Court April 11, 1932, wherein it was held that a federal tax was an undue burden upon an instrumentality of the state of Oklahoma, the state did observe the burden and did protest the tax and resisted the same by amicus curiae brief. But in the instant case it is the plaintiff, Carter Oil Company, which sees and observes the imposition of this gross production tax as a burden on a federal instrumentality; while the federal government, upon the contrary, by the congressional act above quoted, expressly authorized the tax upon the theory, as we conclude, that the imposition of this gross production tax would not unduly burden or in any manner interfere with or hinder the federal government in this particular agency or instrumentality. Since this congressional act had not been adopted and could not have been considered by the court in determining Choctaw, O. & G. R. Co. v. Harrison, and Indian Territory Illuminating Oil Co. v. Oklahoma, supra, we conclude that the rule therein followed cannot control here, and that by reason of said congressional act the imposition of the tax here under consideration cannot be said by the plaintiff to unduly burden or interfere

with an instrumentality of the federal government, nor be attempted to be imposed without the consent of the federal government.

But the plaintiff urges that this congressional act is invalid as being beyond the power of Congress to pass, because it is in violation of a treaty provision of exemption of the land from taxation. The land of the allottee, Jimmie Walker, is by treaty provision exempt from taxation so long as he shall own it, and it could not be made taxable by present Act of Congress. Choate v. Trapp, 224 U. S. 665, 56 L. Ed. 941; Carpenter v. Shaw, 280 U. S. 363. This exemption is a vested right as these last-cited cases hold, but it is the right of the Indian allottee and is vested in him.

The plaintiff cites Choate v. Trapp, supra, and Carpenter v. Shaw, supra, and urges that upon these authorities the Congress was without power to authorize the imposition of this tax upon the plaintiff or those similarly situated. This contention would be true if the plaintiff and those similarly situated as lessees had any existing tax exemption and a vested right in any tax exemption. But this the plaintiff and those similarly situated did not have. The treaties did exempt the land of certain allottees, but such exemption is not available to the grantee of an Indian allottee, as was held in Sweet v. Shock, 245 U. S. 192, 62 L. Ed. 237, and in Fink v. Board of Com'rs of Muskogee Co., 248 U. S. 399, 63 L. Ed. 324. There was never any specific tax exemption to oil and gas lessees by any treaty provision or congressional act. "Tax exemptions are never lightly to be inferred," as was said by the Supreme Court of the United States in Heiner v. Colonial Trust Co., 275 U. S. 232, 72 L. Ed. 256. There the Supreme Court held:

"Income derived by a non-Indian lessee from leases of Indian lands is within the operation of the provisions of the revenue acts that a tax shall be paid upon entire net income."

And in the body of the opinion, that court used this language:

"Assuming that the Indians are not subject to the income tax, as contended, the fact that they are wards of the government is not a persuasive reason for inferring a purpose to exempt from taxation the income of others derived from their dealing with the Indians."

Nor does plaintiff have any exemption from taxation merely because the lease is a federal instrumentality. Not every governmental

instrumentality is immune from taxation as is evidenced by the reasoning in Shaw v. Gibson-Zahniser Oil Corp., 276 U. S. 576, 72 L. Ed. 709, wherein it was held that what instrumentalities of government will be held free from state taxation must be determined in connection with the purpose and character of the legislation creating them. And it is clearly inferred in Jaybird Mining Co. v. Weir, supra, that a federal agency or instrumentality can be taxed by state authority if congressional consent is given thereto.

If the plaintiff, and those similarly situated, had any kind or character of tax exemption, or relief from the gross production tax on oil and gas prior to the adoption of the Act of Congress of May 10, 1928, it existed by reason of the fact that up to that time the federal government had not consented that its agency or instrumentality be taxed, and for the reason further that without such consent it was held by the courts that the imposition of the tax would be or might become an undue burden on the federal instrumentality. This could in no sense be said to be a vested right in the plaintiff, Carter Oil Company, or in the lessees similarly situated, to a perpetual tax exemption, or to any character of exemption beyond the time when congressional consent to this state tax might be given. The producers of oil and gas from these Indian lands, together with the producers of oil and gas from other lands in Oklahoma, should pay their just part of the costs of government by paying this gross production tax. The Congress must have observed that to be true, and must have concluded that federal sanction should be given to the imposition of this tax in order to foreclose any question as to whether such tax was an undue burden on a federal instrumentality. It is, of course, true that the Congress could neither impose the tax itself, nor sanction the imposition of the tax by state authorities upon the lands of the Indian allottees. In Choate v. Trapp, supra, the Supreme Court of the United States used this language:

"There was here, then, an offer of nontaxable land. Acceptance by the party to whom the offer was made, with consequent relinquishment of all claim to other lands, furnished a part of the consideration, if, indeed, any was needed, in such a case, to support either the grant or the exemption. * * * Upon delivery of the patent the agreement was executed, and the Indian was thereby vested with all the right conveyed by the patent, and, like a grantee in a deed poll, or a person accepting the benefit of a conveyance, bound by its terms, although it was not actually signed by him. * * *"

And we agree with the statement in plaintiff's brief that, "The court reached the conclusion that the power of wardship did not confer upon Congress the authority to lessen any of the rights of property which had been vested in the individual Indian by prior laws or contracts, and that such rights were fully protected from repeal by the provisions of the Fifth Amendment, and that the exemption from taxation was a vested property right which could not be abrogated by statute," but it must be noted that the tax exemption in question was granted to the Indian allottee himself.

In Carpenter v. Shaw, supra, the Supreme Court of the United States said:

"Tax exemptions secured to Indians by agreement between them and the national government are to be liberally construed, and doubtful expressions therein resolved in their favor."

And the court further said in that case:

"The meaning of a tax exemption secured to Indians by agreement with the national government may not be narrowed by any subsequently declared intention of Congress."

But here also it is to be noted that the court was dealing with tax exemptions secured to the allottee himself, and in reference to his own ownership of his own land. We find no authority for passing along any such exemption to the grantee or lessee of the Indian allottee.

It is not in any manner shown that the plaintiff ever had any vested right in tax exemptions which could in any manner operate to prevent Congress from properly adopting the Act of May 10, 1928, and we conclude that no such vested right in plaintiff in any manner existed.

We therefore conclude that the Congress was within its power in passing the Act of May 10, 1928, that by the adoption of said act the federal government clearly acquiesced, in so far as it was concerned, in the imposition and collection of the tax herein questioned, thereby establishing it as the policy of the federal government that the imposition and collection of this tax is not an undue burden upon any federal instrumentality, that the tax herein questioned was properly charged against and collected from the plaintiff, and the plaintiff is not entitled to recover the same back, nor to any relief in this action; and plaintiff's petition for recovery is in all things denied.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur.