## UNITED STATES v. ALLBAUGH et al.

### No. 1-46.

United States District Court
D. Nebraska, Omaha Division.

March 3, 1949.

Joseph T. Votova, U. S. Atty., of Omaha, Neb., for plaintiff.

George M. Tunison, of Omaha, Neb. and Richard Peck, of Plattsmouth, Neb., for defendants.

DONOHOE, Chief Judge.

One hundred and seven complaints have been filed in this court by the United States

of America against various defendants, who are either lessees or their bondsmen of certain allotted Indian lands situated in Thurston County, Nebraska.

In each suit the government asserts the right for and on behalf of the Indian lessors of the demised premises to collect unpaid taxes assessed against such lands by the public bodies of Nebraska, pursuant to the terms of the Brown-Stephans Act of 1916, 39 Stat. 865.[1]

In the great majority of these cases, the parties are represented by the same counsel as those now appearing. Anticipating identical issues to arise among such cases, these counsel have agreed that the decision of this case should govern in all others in which they represent the parties, and with a view toward facilitating the disposition of these many cases, counsel have agreed that the answer and reply herein shall be applicable to all other cases wherein they appear; that the submission of this case shall be the submission of every other such case;

and that the findings of fact and conclusions of law hereinafter set forth shall apply with equal efficacy in all of the other cases.

As to these other cases, however, a reservation was made reserving for further proof questions relating to the modification of certain leases; the cancellation or remission of payment of some of the taxes; and the exact amount still due and owing under the terms of the numerous leases.

It was further agreed that the judgment herein should be the final judgment in all other cases wherein the present counsel appear, but no entry thereof should be made pending the expiration of the time for appeal. If an appeal is taken, then the entry of final judgment in the other such cases shall be deferred until the final decision in this case is rendered.

This cause was heard and determined upon an agreed stipulation of facts, written briefs and oral arguments of the parties. From such stipulation of facts and from

---

[1] The Brown-Stephans Act of 1916, 39 Stat. 865, among other things, provides:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all of the lands in the State of Nebraska belonging to the members of the tribe of Winnebago Indians held under trust patents of allotments, and upon which the twenty-five-year trust period shall have expired, or shall expire, and which trust period shall have been or shall be extended as provided by law, shall be, and the same are hereby, made subject to appraisement and assessment for the purposes of taxation and subject to taxation for local, school district, road district, county, and State purposes, as provided by the laws of the State of Nebraska now in force or to be hereafter enacted.

"Sec. 2. That all of the lands in the State of Nebraska belonging to the members of the tribe of Omaha Indians now held under trust patents of allotments issued in eighteen hundred and eighty-five or subsequent thereto, and upon which the twenty-five-year trust period shall have expired, and which trust period shall have been extended, as provided by law, shall be, and the same are hereby, made subject to appraisement and assessment for the purposes of taxation and subject to taxation for local,

school district, road district, county, and State purposes, as provided by the laws of the State of Nebraska now in force or to be hereafter enacted: Provided, That any of the lands described in section one and section two of this Act, so long as the same shall be held under trust patents, shall not be subject to levy and tax sale, as provided under the laws of the State of Nebraska for the collection of such taxes; but if such tax shall not be paid within one year after the same shall become due and payable, as provided by the laws of the State of Nebraska, then the list of such unpaid and delinquent taxes on the lands of the Winnebago Indians and Omaha Indians, as above provided, shall be certified by the county treasurer of the county in which such lands are situated to the Secretary of the Interior, who shall be authorized to pay the same from any funds belonging to the Indian allottees owning such lands so taxed and arising from the rentals thereof or under his control; and in the event that no such funds shall be in the possession or under the control of the Secretary of the Interior, he shall certify that fact to the said county treasurer, which certificate shall operate as a full release and discharge of the tax assessed against the land of the Indian so without funds."

the proposed findings of fact submitted by the plaintiff and the defendants, the court now makes its

### Findings of Fact

1. The lands involved herein were formerly part of the Indian Reservation situated in Thurston County, Nebraska. At different stages of the time interval now involved, they comprise the N½NW¼ of Section 25, the NW¼SW¼ of Section 24, and the W½SW¼ of Section 24, all in Township 26, North Range 6, West of the Sixth Principal Meridian. These lands were allotted by trust patents of allotment to the various Indian lessors, or other allottees, under whom the lessors claim as heirs, pursuant to the terms of the General Allotment Act of 1887, 24 Stat. 388, 25 U.S.C.A. § 331 et seq.[2] Said trust period on the lands in question has been extended, and the government now and at all times mentioned herein did hold the fee to these leased lands in trust for the various lessors.

2. By the Act of March 3, 1921, 41 Stat. 1232, 25 U.S.C.A. § 393, these lands were made available for lease for farming and grazing purposes.

3. Prior to 1933, it was the practice to lease these lands to the highest acceptable bidder following advertising for bids by printed advertisements. These advertisements contained an appraisal value of each tract by acre. Included in such appraisement figure were the taxes. Prospective lessees in order to secure the desired lease had to submit a bid not less than this appraised value, as set forth in the advertisements which further provided:

"* * * lessees must pay the taxes direct to the County Treasurer and file tax receipts in the agency office. The amount of the taxes will be deducted from the total yearly rental."

4. For the years 1934 to 1942, inclusive, the practice of first appraising the value of these lands was discontinued. Nevertheless, advertisements for bids were still used and circulated prior to the execution of any lease. These advertisements contained the following pertinent language:

"The present lessee, if a satisfactory lessee, will be given preference."

"Lessees whose rentals are delinquent will not be entitled to preference rights."

"Bids will be received for cash, or bushel per acre, plus taxes. The taxes are to be paid direct to the County Treasurer and the tax receipts filed in the Agency office."

5. The defendant Allbaugh leased the N½NW¼ of Section 25, Township 26, Range 6, for the period 1934–1935; the lease was renewed for the period 1935–1936; it was renewed for the period 1936–1939; and it was renewed for the period 1939–1942; and it was renewed again for the period 1942–1944.

6. The defendant Allbaugh likewise leased the NW¼SW¼ of Section 24, Township 26, Range 6, for the period 1937–1938. He leased the W½SW¼ of said section for the period 1938–1939, and the lease was renewed for the period 1939–1942; it was again renewed for the period 1942–1944.

7. The aforesaid leases were executed on printed forms, signed by the defendant Allbaugh, the Indian lessors, and approved by the local Indian agent. The manner of execution is unchallenged. The other defendants herein are Allbaugh's sureties, whose bonds are attached to the said leases, and which were given to secure the punctual payment of all rents and the perform-

2 Section 348 of 25 U.S.C.A. provides, in part:

"Upon the approval of the allotments * * * by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: Provided, That the President of the United States may in any case in his discretion extend the period. * * *"

ance of each and every covenant by the said Allbaugh.

8. During the years 1934 to 1942, inclusive, while the defendant Allbaugh was in possession of the following tracts of land under the provisions of the aforesaid written instruments of lease, Thurston County, Nebraska, in conformity with the Brown-Stephans Act, and the laws of Nebraska, assessed taxes against the said premises in the following sums:

| Year | N½NW¼ 25–26–6 | NW¼SW¼ 24–26–6 | W½SW¼ 24–26–6 |
|------|------|------|------|
| 1934 | 77.26 | | |
| 1935 | 82.74 | | |
| 1936 | 99.50 | | |
| 1937 | 118.70 | 47.75 | |
| 1938 | 119.02 | | 95.74 |
| 1939 | 118.65 | | 95.46 |
| 1940 | 98.73 | | 83.38 |
| 1941 | 96.63 | | 82.54 |
| 1942 | 67.52 | | 57.39 |

9. The pertinent portion of the defendant Allbaugh's lease for the year beginning March 1, 1934, and ending the last day of February, 1935, reads as follows:

"The lessee, in consideration of the foregoing, covenants and agrees to pay 12. bu. corn per acre per year to the Superintendent of the Winnebago Agency as rental for said land and premises in one payment on or before Dec. 15, 1934, during the lease. All rentals not paid when due will draw 7 per cent interest from that date. Corn to be harvested, shelled and delivered to nearest market on or before Dec. 15, 1934, free of cost to lessors.

"The lessee agrees to pay all taxes assessed against the land during the term of the lease promptly when due, and to send the receipts therefor to the Superintendent, who will credit the amount on the rental, the balance to be paid as specified above."

10. The remaining leases for the years during which Thurston County, Nebraska, assessed taxes against the demised premises as aforesaid contain the following language:

"The lessees, in consideration of the foregoing, covenants and agrees to pay" (so much cash or bushel per acre plus taxes or and taxes) "per acre per year to the Superintendent of the Winnebago Agency as rental for said land and premises."

"All rentals not paid when due will draw 7% interest from that date."

"The lessee agrees to pay all taxes assessed against the land during the term of the lease promptly when due, and to send the receipts therefor to the superintendent, who will credit the amount on the rental * * *."

11. Appended to the lease for the year beginning March 1, 1934, and ending on the last day of February, 1935, during which time the aforesaid sum of $77.26 accrued and was payable, is a Modification Agreement dated June 25, 1935, and duly approved by the local Indian agent, whereby it was agreed by and between the Indian lessors and the defendant lessee and his bondsman, that the said lessee was to pay in full payment of the 1934 rent "$80.00 cash and shingled house valued at $50.00 * * *".

12. Appended to the lease for the years beginning on March 1, 1935, and ending on the last day of February, 1939, which leased the N½NW¼ of Section 25, Township 26, Range 6, is a Modification Agreement dated April 16, 1937, and duly approved by the local Indian agent, whereby the defendant Allbaugh, his bondsmen, and the Indian lessors agreed: "The lessee having paid in the spring rent, lessee will pay in addition $10.00 in full payment for 1936 rent, including taxes and interest to date."

13. Appended to the leases for the years beginning March 1, 1939, and ending on the last day of February, 1942, which leased the N½NW¼ of Section 25, and the W½SW¼ of Section 24, Township 26, North Range 6, West of the Sixth Principal Meridian, and with reference to the year 1939, during which time the aforesaid sums of $118.65 and $95.46 became due and payable, are Modification Agreements dated February 15, 1940, and January 9, 1940, respectively, approved by the local Indian agent, whereby it was agreed by and between the Indian lessors and the defendant Allbaugh, and his bondsmen, that "Lessee

agrees to pay $200.00 plus taxes in full settlement of 1939 rentals." on the N½ NW¼ of Section 25, and, "Lessee agrees to pay $200.00 in full settlement of the 1939 rentals. Lessee also agrees to pay the taxes." on the W½SW¼ of Section 24, Township 26, North Range 6, West of the Sixth Principal Meridian.

14. Pursuant to the terms of the said written instruments of lease, and during the aforesaid years when Thurston County, Nebraska, did assess the aforesaid sums of taxes against the demised premises, the defendant Allbaugh entered upon and took possession of the lands leased and enjoyed the peaceable possession thereof, and all the benefits resulting therefrom, and was not in any way disturbed in said possession by the plaintiff, or by any person claiming under the plaintiff, or by the Indian lessors or by any person claiming under him. The defendant Allbaugh does not now and has never claimed any right, title or interest in such lands other than that derived from the aforesaid leases, and his sureties do not now claim, nor have they claimed at any time, any right, title or interest in the demised premises beyond their right as sureties of the defendant Allbaugh.

15. The defendant lessee has paid the specific sum of cash or bushel per acre rental, but neither he nor his bondsmen, nor any one of them, nor any one for them, have paid the aforesaid sum of taxes to the Treasurer of Thurston County, Nebraska, or to the Indian lessors, or to their heirs, or to the Secretary of the Interior, or to any one. Neither have the said lessors, or their heirs, or the Secretary of the Interior, or any one for them, paid the aforesaid sum of taxes to. the County Treasurer of Thurston County, or to any one.

16. No list of the aforesaid unpaid taxes was certified by the County Treasurer of Thurston County, Nebraska, to the Secretary of the Interior, as provided by the Brown-Stephans Act. The Secretary of the Interior made no certification to the County Treasurer of Thurston County as provided by the Brown-Stephans Act, and in respect of rental funds belonging to the Indian lessors and under the control of the said Secretary out of which said taxes could be paid.

17. The local Indian agent charged defendant lessee interest on delinquent rentals, but did not charge interest on delinquent taxes.

## Discussion

Several defenses are urged against this action. They are:

(1) That the complaint fails to state a claim against defendants upon which relief can be granted.

This defense was previously interposed by motion prior to answering. It was overruled at that time, due to the inability of the court to conclude with legal certainty that under any set of facts, alleged or inferred, the plaintiff could not recover. Now that the case, together with all the evidence, has been submitted, the court rejects this argument with finality.

(2) That the plaintiff is not the real party in interest entitled to prosecute this action.

(3) That the remedy prescribed by the Brown-Stephans Act for the collection of these taxes is exclusive, and

(4) That the Brown-Stephans Act is unconstitutional.

In turn, the United States asserts this is an action to recover part of the rental for the demised premises, and the defendants are estopped to deny their liability.

While the defenses urged, singularly and collectively, are wholly without merit, the apparent sincerity with which they are presented compels the court to treat them in like manner. However, their orderly discussion in the perspective of this lawsuit necessitates certain preliminary observations.

Undisputedly this is an action ex contractu to collect a debt arising from the assessment of taxes against the leased lands, which debt the defendants have promised to pay. Consequently the dissension whether the tax is really a true real estate tax, since upon delinquency collection by execution and sale of the demised premises can not occur, or whether it is more in the nature of a contribution by the lessors, is noted, but passed over as immaterial. It is likewise observed that this debt is due the estate of the lessors, either as part of the

rental for the demised premises, or as an indemnity to that part of the lessors' estate under the control of the Secretary of the Interior. This latter observation is more fully discussed hereinafter. Finally, it is admitted by plaintiff that there can be no recovery of that part of the debt where the defendants' liability in reference thereto has been eliminated under the modification agreements.

■ Considering the defenses in the order presented, it is first concluded that the defendants' position in respect of Rule 17(a), Federal Rules of Civil Procedure, 28 U.S.C.A., which requires each suit to be prosecuted in the name of the real party in interest, is untenable. Such rule presents no barrier to the maintenance of this suit by the government. By its express provision, a trustee of an express trust, as well as a guardian, may sue without joining either the beneficiary or the ward. It can not be seriously contended therefore that the United States is now precluded from collecting this debt when, by the declared provisions of the General Allotment Act of 1887, 25 U.S.C.A. 348, the government holds the fee to these leased lands in trust for the lessors, and the relationship which obtains between them and the United States is that of ward and guardian. See cases collected in 42 C.J.S., Indians, § 20, p. 672.

■ It is erroneous to assert that the real party in interest is the one entitled to the avails of this suit, and since defendants' promise to pay the taxes runs to the benefit of Thurston County it, and only it, might sue for the collection of this debt. As hereinbefore observed, and as more fully set forth subsequently, the debt sought is due and owing to the estate of the lessors. That Thurston County may be, or might have been, the ultimate recipient of all or part of this debt (the court does not decide if lapse of time precludes the county) does not change the perspective of this lawsuit; nor is it altered because the government is not suing for and on behalf of the county, assuming arguendo such action proper.

■ The real party in interest requirement means that he who seeks relief must have the right thereto by the substantive law. 3 Moore's Federal Practice, 2nd Edition, p. 1305.

Granting certain similarity in language between Nebraska's real party in interest statute and that of Rule 17(a), and acknowledging that in Nebraska the real party in interest is the one entitled to the avails of the suit, Uptegrove v. Metropolitan Life Ins. Co., 145 Neb. 51, 15 N.W.2d 220; Kinsella v. Sharp, 47 Neb. 664, 66 N.W. 634, the consequence of such concession seems nil. For the distinction between the two definitions seems in phraseology only, and without a real difference. Obviously, the one entitled to the avails of the suit must be so endowed by the substantive law of the state.

But apart from this consideration, it should be noted that this question whether the government may maintain this suit, is determined by federal law which, as applied here, proves to be neither an innovation or a whimsical thing. By substantive law generally, it is the duty of the guardian to enforce the rights belonging to the estate of the ward. 3 Moore's Federal Practice, 2nd Edition, p. 1365. This fundamental principle has found expression in the governmental policy of the United States towards its Indian wards which permits the government:

"to sue to recover damages for the breach of a lease made by an Indian allottee with the approval of the Secretary of the Interior, or to protect or enforce any other property right of such a lessor which remains under the control and supervision of the Secretary or the Indian agent, his subordinate, because such suits are necessary to protect and enforce the governmental rights of the United States and its governmental policy to protect the property rights of the Indians and to teach them the arts of civilized life." United States v. Gray, 8 Cir., 201 F. 291, 294, 295.

The court fails to see any reason why the government should be allowed to recover damages from a lessee on behalf of an Indian lessor, still its ward, for breach by the lessee of his covenant to make improvements of the demised premises as was the case in United States v. Gray, supra, and not be so favored in the present instance, which

is nothing more than an action to recover a debt due the estate of the lessors, still the wards of the government.

But the defendants contend they owed no liability to the lessors in respect of this debt, because the promise to pay the taxes was not to pay them to the lessors, or to any one, except Thurston County. In short, they contend the taxes were due not as an addition to the stipulated rental, but in addition thereto, and therefore this debt is not due the estate of the lessors. Defendants argue that this case is distinguishable from the ordinary agreement to pay taxes in addition to rental. It is the defendants' position that in such ordinary cases the liability of the covenantor is predicated upon the theory that he has undertaken to pay a debt due a third party, and as between the original debtor and the covenantor, the former may sue the latter without first paying the debt, see Vorse v. Des Moines Marble & Mantle Co., 104 Iowa 541, 73 N.W. 1064, 1066, but in this case, since the taxes can not become a lien upon the demised premises, and since neither the lessors nor the Secretary of the Interior has paid them, although defendants admit they might voluntarily do so, there is no debt, and the defendants have in fact promised nothing.

The court rejects this argument in its entirety. It mistakes the very nature of defendants' promise, which is to pay the taxes as additional rental, and thus creates a debt due the lessors. Yet if this be not true, then defendants' argument is equally fallacious in that it is premised upon the false assumption that merely because the taxes can not become a lien upon the leased lands, there is no debt of the lessors which they might wish to indemnify against, and which indemnity the defendants have promised. It matters not that lapse of time may preclude Thurston County from collecting these taxes. This the court does not decide, however. The County's negligence can not be the basis for holding the lessors unjustly enriched by permitting the plaintiff to prevail in this action. Furthermore, the lessors may voluntarily pay these taxes to the county.

In construing the defendants' promise to pay these taxes, the court is of the opinion that they were intended to be part of the rental for the demised premises. The leases for the years during which this debt accrued, apart from those years where modification agreements have eliminated defendants' liability, clearly state that the lessee is to pay so much cash or bushel per acre and taxes, as rental. The fact that the lessee was required to pay the taxes to Thurston County and not to the lessors, or someone on their behalf, does not change the fact that taxes were to be considered as part of the rental. Clearly this was a matter of expediency, designed to eliminate a circuity of motion culminating in payment by the lessors, or the Secretary of the Interior.

Furthermore, for some time prior to the years in question, the taxes on these lands were included in an appraisal value thereof, and prospective lessees to be successful were required to submit bids equal at least to this appraised value. For the years in question, the leases were executed subsequent to advertisement which contained no appraised value including taxes, but did declare that bids would be received for cash, or bushel per acre, plus taxes.

■■ That the local Indian agent did not keep a record of delinquent taxes, did not consider them when computing interest on delinquent rentals, and the fact that leases were renewed to the defendant Allbaugh without denying him a preference, does not indicate the intent of the parties in respect of whether said taxes were intended as rent. Such smacks more of waiver and estoppel, but there is no claim of this. There is nothing in the record to show that the lessors or the government were ever in a position to deny Allbaugh's preference right. There is nothing to show that the lessors, assuming their right to do so, waived the right to receive these taxes. Assuming the right of the government to waive their collection for and on behalf of its wards, the lessors, the record is significantly silent as to the power of the local Indian agent to bind the guardian. Perhaps this is due to the fundamental rule that the United States is neither bound nor estopped by acts of its officers or agents in entering into an agreement or causing something other to be done which the law

does not sanction. See Utah Power & Light Co. v. United States, 243 U.S. 389, 408–409, 37 S.Ct. 387, 61 L.Ed. 791; Wilber National Bank v. United States, 294 U.S. 120, 123–124, 55 S.Ct. 362, 79 L.Ed. 798; Sutton v. United States, 256 U.S. 575, 579, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403; United States v. Stewart, 311 U.S. 60, 70, 61 S.Ct. 102, 85 L.Ed. 40; Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1. Be that as it may, the burden of proving either waiver or estoppel has not been met, and from the record, the court can not summarily conclude that the right to receive said taxes as rent was waived.

■ The taxes being due therefor as part of the rental and constituting the debt sued for, this action may be maintained without the lessor or its guardian first paying said taxes to Thurston County. Minnesota Loan & Trust Co. v. Medical Arts Bldg. Co., D.C., 8 F.Supp. 907, appealed on other grounds and affirmed 8 Cir., 78 F.2d 937, 101 A.L.R. 770.

Even if the court errs in concluding that these taxes are due as part of the rental, they are nevertheless due the lessors as a debt owing their estate. The Brown-Stephans Act gave the Secretary of the Interior the right to pay these taxes out of "any funds belonging to the Indian allottees owning such lands so taxed and arising from the rentals thereof or under his control". Ostensibly, the covenant of defendants to pay these taxes was entered into so that the funds of the lessors under the Secretary's control would be indemnified against depletion by the continual payment of taxes. Thus the debt sued for, if not due as rental, is due as an indemnity to such funds.

The statement that the lessors show no damage is wholly unsubstantiated in the posture of this case. Their damages are not speculative or uncertain; they are definite for this is an action to collect a debt.

■ Next, the defense that the remedy prescribed by the Brown-Stephans Act, i. e. the collection of these taxes by certification of them within one year after they are due and payable to the Secretary of the Interior, is exclusive of all others and must be followed, is without merit. Such principle would have consideration only if the County of Thurston were attempting to collect these taxes.

Finally, the defendants contend that the right of the lessors to the use of these leased lands, free from taxation, is a vested right and the supreme law of the land, and that the Brown-Stephans Act is in derogation of such right, and consequently void and of no effect. Defendants' asserted right to attack the constitutionality of the Brown-Stephans Act is premised upon the assumption that the lease contracts now involved are bottomed upon such Act, and defendants being a party to the contracts are entitled to assert the unconstitutionality of the Act. However, the lease contracts are not bottomed upon the Brown-Stephans Act. Merely because taxes were assessed in contemplation of and in conformity with said Act does not merit the defendants' assumption. The lease contracts do not arise out of the Brown-Stephans Act. Rather, they are founded upon negotiations entered into with a view of conferring upon the defendants a leasehold estate for a term of years. If it is necessary to decide that a specific Act of Congress gave rise to these leases, then quite ostensibly such Act is that of March 3, 1921.

■ For one to successfully challenge the constitutionality of a statute, he must show some injury to a personal or property right resulting from its operation. Justice Brandeis concurring opinion in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688. 16 C.J.S., Constitutional Law, § 76, p. 161, states the rule thusly:

"A constitutional question may not be raised by one whose rights are not directly and certainly affected; * * *."

The defendants claim no violation of their personal rights by the operation of the Brown-Stephans Act, nor do they claim any violation of a property right. Their sole argument is premised upon the thought that the lessors have a vested right to tax immunity in the use of these leased lands. Defendants do not claim that such right is a property right which attached to and became an incident of the demised premises so as to pass to the lessee thereof. Per-

118

haps this omission is due to the fact that these lands are held pursuant to the General Allotment Act, and lands so held by an Indian allottee are declared free from taxation upon the theory that such lands are instrumentalities of the federal government. United States v. Rickert, 188 U.S. 432, 23 S.Ct. 478, 47 L.Ed. 532; United States v. Thurston County, 8 Cir., 143 F. 287, and the necessary governmental assent is signified by the Brown-Stephans Act.

Or perhaps defendants' failure in this respect is due to their recognition that even if the lessors' alleged right to tax immunity is premised upon the theory of a binding agreement, an assumption neither claimed nor shown, Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941; Morrow v. United States, 8 Cir., 243 F. 854, 856, such immunity is personal unto the lessors alone, Fink v. County Commissioners, 248 U.S. 399, 403, 39 S.Ct. 128, 63 L.Ed. 324.

But whatever theory underlies defendants' claim that the lessors have an immunity in the use of these lands free from taxation, it does not lie in the mouth of the defendants to assert such immunity. As heretofore noted, the leases now in question were not founded upon the Brown-Stephans Act, and the simple fact that the defendants are parties to the said leases does not give them the right to question the validity of the said Act; particularly in the absence of any claim or showing that the defendants have been deprived of a personal or property right by the operation of the Brown-Stephans Act. Furthermore, the lessors may voluntarily pay taxes upon their lands so as to benefit thereby by better roads, schools, etc. Mahnomen County v. United States, 319 U.S. 474, 63 S.Ct. 1254, 87 L.Ed. 1527.

In conclusion it should be noted that defendants, having entered into the possession of the demised premises in pursuance of the terms of the several written leases, and having enjoyed all the benefits resulting from their leaseholds, they are now estopped to question the burdens imposed by said leases or deny their liability in respect thereto.

Conclusions of Law

1. This is an action to recover a valid and enforceable debt due and owing the estate of the Indian lessors, still wards of the government, and as their guardian, the United States has the right to prosecute this action for and on their behalf.

2. Said debt arises by virtue of taxes assessed against the demised premises by the County of Thurston, Nebraska, in conformity with the Brown-Stephans Act, and the laws of the state of Nebraska.

3. The defendants, by written promises, are primarily obligated to pay said debt, and the United States may recover for and on behalf of the Indian lessors without said taxes first being paid to Thurston County.

4. The defense that the remedy prescribed by the Brown-Stephans Act for the collection of said taxes is exclusive of all others, has no application in the case at bar. Such defense would be considered only if Thurston County, Nebraska, were attempting to collect said taxes from the Indian lessors, or the defendants herein.

5. The defendants have no right to attack the constitutionality of the Brown-Stephans Act.

6. This action being founded upon written instruments of lease under which the defendants took peaceable possession of the demised premises and enjoyed all the benefits resulting therefrom, said defendants are now estopped to deny the burdens of said leases or to repudiate their liability in respect thereto.

Judgment will be accordingly.